No. 2--06--0289                    filed: 1/17/07

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| In re MARRIAGE OF LINDA THOMSEN, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| Petitioner-Appellee, | ) ) | |
| and | ) ) | No. 89--D--1855 |
| DAVID THOMSEN, n/k/a David Christopher, | ) ) ) ) | Honorable Joseph R. Waldeck, |
| Respondent-Appellant. | ) | Judge, Presiding. |

JUSTICE BYRNE delivered the opinion of the court:

Respondent, David Thomsen, n/k/a David Christopher, appeals, inter alia, from orders (1) concealing the identity of his daughter Kiersten's college; (2) compelling him to pay 50% of her college tuition and related expenses; (3) denying his second amended petition for DNA testing, and (4) awarding sanctions to petitioner, Linda Thomsen. For the reasons that follow, we affirm.

BACKGROUND

The record on appeal reveals that the parties were married in February 1982. During the marriage, two children were born, Kiersten and Ashlea.

On June 26, 1990, during dissolution proceedings, petitioner petitioned to terminate respondent's visitation, alleging, among other things, that Kiersten was sexually abused by respondent. On April 22, 1991, the parties stipulated that Dr. Ronald Tanouye would testify that

he examined Kiersten and that his examination revealed a mild reddening of the urethra, which could have resulted from a variety of causes, including sexual abuse. On April 24, 1991, the court suspended visitation between respondent and the children, and both parties were ordered to submit to treatment.

On June 24, 1993, the judgment for dissolution of marriage was entered. The trial court granted petitioner full custody of the children and suspended visitation with respondent, finding that visitation would seriously endanger the children's physical, mental, moral, or emotional health. The trial court further found that respondent had failed to establish that since April 24, 1991, a change of circumstances had occurred that would support a finding that it was in the best interests of the children to resume visitation.

CONTRIBUTION FOR KIERSTEN'S COLLEGE

On October 5, 2004, petitioner filed a motion for a trust under section 503(g) of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/503(g) (West 2004)). Count I alleged that respondent, who was now using the name David Christopher, had not paid child support for 11 years, had been incarcerated for failing to pay support, and had an arrearage in the amount of $109,000. Count II, which is the subject of this appeal, sought contribution toward Kiersten's college expenses.

On August 2, 2005, following a "hearing on the motion for college contribution," the trial court ordered petitioner to provide to respondent Kiersten's college transcripts and report cards to prove that Kiersten had over 12 credit hours of schooling and a passing average. The order stated that these documents may be redacted to delete any information identifying the school, over respondent's objection pursuant to section 513 of the Act. The order further stated that in

Kiersten's best interest she should not be obligated to sign consents to release school information and that "she shall not be obligated to provide the same." The order further provided that the parties were obligated to split the costs of tuition, books, and room and board, after deducting any grants or scholarships. The order reserved for future consideration and continued for hearing the issues of incidental expenses, loan applications, and loan cost allocation, "including how many loans the child must take, who shall pay them back & to whose share they will apply, if anyone's." On appeal, respondent has not provided a transcript, a bystander's report, or an agreed statement of facts of the hearing conducted on August 2, 2005.

On September 14, 2005, the trial court conducted an evidentiary hearing. Petitioner testified regarding her income, a financial aid application, and college costs. She testified regarding loans and a scholarship to which Kiersten was entitled and Kiersten's resources. Petitioner also testified as to the $2,854 in incurred incidental expenses and future contributions, which she was seeking. She further testified about Kiersten's medical insurance costs.

On cross-examination, respondent's counsel asked a series of questions regarding petitioner's income, loans, and child support, Kiersten's income and assets, and health insurance coverage and costs. Counsel also asked a series of questions regarding petitioner's assets, which raised an objection by petitioner's counsel. In sustaining the objection, the trial court noted that respondent's counsel was attempting to contest the August 2 order. The trial court noted that the allocation had been determined and that counsel had not filed a motion to reconsider that order. While the trial court did allow respondent's counsel to make an offer of proof regarding petitioner's assets, petitioner's attorney noted disagreement with the offer of proof. Further,

respondent never testified at the hearing or at any other time indicated in the record. No motion to reconsider the August 2 order was ever filed.

Following the hearing on September 14, the trial court ordered that petitioner could remove $10,000 from Kiersten's Morgan Stanley account without penalty, if the funds were available. If the funds were unavailable, each party was directed to pay $5,000 toward tuition and school-related expenses. Respondent's share was to be paid to the college, through his attorney. Thereafter, by an agreed order entered on September 23, 2005, respondent would pay $5,000 if petitioner provided written proof that the Morgan Stanley account funds were unavailable.

On September 15, 2005, petitioner filed a motion to modify the judgment for dissolution of marriage, pursuant to sections 505.2, 510, and 513 of the Act (750 ILCS 5/505.2, 510, 513 (West 2004)). Petitioner sought respondent's contribution toward medical and dental insurance costs and uncovered medical expenses for Kiersten.

On November 2, 2005, the court ordered that each party contribute $1,000 per semester for Kiersten's incidental college expenses. The trial court denied petitioner's motion to continue medical insurance coverage for the children past the age of majority.

On November 15, 2005, petitioner filed a motion to designate incidental expenses. In the motion, petitioner referenced the November 2 order awarding contribution toward incidental expenses and sought clarification.

Thereafter, on February 10, 2006, the trial court ordered respondent to pay $5,539, of which $890 was to be paid toward Kiersten's first-semester tuition and incidental expenses after respondent's payment of $5,000, $3,649 for expenses for the second semester per the current bill

showing $7,298 incurred to date, plus $1,000 for second-semester estimated incidental expenses. Respondent was also ordered to pay 50% of any uncovered reasonable and necessary medical expenses incurred by Kiersten until she graduates from college, including summer and other school breaks, provided that she remains in college. Finally, the order provides that, if respondent finds out the name of Kiersten's college, he may apply for a parent loan. Respondent has not provided a transcript, a bystander's report, or an agreed statement of facts of the February 10 hearing.

### DNA PETITIONS

From the time of the petition for dissolution, respondent has denied paternity of the children. Although he denied paternity, the trial court found no "scientific evidence to the contrary." Respondent never sought to vacate this determination, pursuant to section 2--1401 of the Code of Civil Procedure (735 ILCS 5/2--1401 (West 2004)) or otherwise.

On May 11, 2005, almost 12 years after the dissolution judgment adjudicated him to be Kiersten's and Ashlea's father, respondent again denied paternity and filed a petition for DNA testing. Respondent alleged that, at the time of the dissolution, science had not reached the stage to provide a definitive DNA test to determine parentage; that it was "customarily" determined by blood sample testing, which is inherently less definitive than the current state of DNA testing.

Thereafter, respondent filed an amended petition for DNA testing, identical to the first petition but citing as support section 7(b--5) of the Parentage Act of 1984 (Parentage Act) (750 ILCS 45/7(b--5) (West 2004)).

On July 12, 2005, in reviewing the validity of the petition for DNA testing, the court noted that "there is no affidavit here that tells me why he now wants the amended petition for

DNA testing. There are no new facts that are not [sic] pled that are relevant to you requesting the petition for DNA testing when it was already done." The court stated, "I just don't know whether or not this is well pled." The court struck the petition for failing to plead sufficient facts and, on reflection, further held that the petition was barred by the applicable statute of limitations.

On July 25, 2005, respondent filed a second amended petition for DNA testing. This time respondent added the allegation that he was not aware of the technological inadequacies of the blood testing performed on the children in 1990 until he was so advised in 2005 by Ken Pfoser, a forensic scientist and the head of the Forensic Biology DNA Unit at the Northern Illinois Crime Lab. Respondent did not attach an affidavit from Pfoser and the record does not reflect that testimony from Pfoser was ever introduced or offered.

Petitioner again moved to dismiss the petition as untimely. The judge concluded that "[t]he issue of paternity had previously been determined by court order. No filing of any petition, 2--1401 or other having been filed, the petition for DNA testing I find is baseless and frivolous, and it's going to be denied." The judge continued that he was going to order that a motion for sanctions be filed to assess fees. Petitioner's counsel interrupted him, stating that she had already attached a separate claim for sanctions and was asking for $1,300. The judge asked if the parties were ready for a hearing on the motion. Respondent's counsel asserted that he did not have an itemization of petitioner's counsel's time, and the court reserved the issue.

Thereafter, on November 16, 2005, following an agreement by the parties as to the amount of the sanctions, the trial court awarded $1,009 in attorney fees to petitioner. This timely appeal followed.

ANALYSIS

Respondent raises numerous issues in this appeal, which we have attempted to divide into the following four categories: (I) allocating college-related expenses and concealing the identity of Kiersten's college; (II) determining the amount of college expenses; (III) denying the second amended petition for DNA testing; and (IV) imposing Supreme Court Rule 137 (134 Ill. 2d R. 137) sanctions.

## I. Allocating College-Related Expenses and Concealing the Identity of Kiersten's College

Under this category, respondent argues that the trial court (1) abused its discretion in concealing the identity of Kiersten's college; (2) erred in interpreting section 513(a) of the Act because the language requires that the name of the college be disclosed; (3) improperly applied the best interests standard in redacting the name of the college; (4) abused its discretion in preventing respondent from presenting evidence of the parties' respective financial conditions; (5) in allocating tuition and college expenses, failed to consider the factors listed in section 513(b) of the Act, including Kiersten's college fund and the obligations respondent has to his new family, as well as his lack of a relationship with Kiersten; and (6) abused its discretion by failing to provide an evidentiary hearing.

All of the issues above relate to the August 2 order, where the trial court ordered that the parties split tuition and college-related expenses, that petitioner provide to respondent Kiersten's transcripts and report cards but with information identifying the school excised, and that it was "in the best interest" of Kiersten not to have to sign consents to release school information to respondent. However, respondent has not provided this court with a record of the August 2 hearing, and therefore respondent has failed to submit a complete record to this court. Supreme Court Rule 323(a) (Official Reports Advance Sheet No. 2 (January 18, 2006), R. 323(a), eff. December 13, 2005) provides that the appellant has the responsibility to ensure that the record on

appeal contains a report of proceedings that includes "all the evidence pertinent to the issues on appeal." If a court reporter's transcript of the relevant proceedings is unavailable, the appellant may prepare a bystander's report or an agreed statement of facts. Official Reports Advance Sheet No. 2 (January 18, 2006), Rs. 323(c), (d), eff. December 13, 2005.

Rule 323, like the other supreme court rules governing appeals, is not a mere suggestion. See Hall v. Turney, 56 Ill. App. 3d 644, 645 (1977). Rather, the rule has the force and effect of law and is binding on litigants as well as the courts. Hall, 56 Ill. App. 3d at 645. As a consequence, when a report of proceedings, or a substitute, is essential to resolving an appeal and the appellant has failed to provide this court with such a record, we must presume that the trial court followed the law and had a sufficient factual basis for its ruling. See Foutch v. O'Bryant, 99 Ill. 2d 389, 391-92 (1984).

Here, the majority of the issues under the first category requires this court to defer to the trial court's judgment. See, e.g., In re Marriage of Eidson, 235 Ill. App. 3d 907, 911 (1992) (trial court has broad discretion in the distribution of marital assets and debts, and the court's division of property will not be reversed absent an abuse of discretion); Buckholtz v. MacNeal Hospital, 313 Ill. App. 3d 521, 526 (2000) (plaintiff maintained that record failed to establish that expert witness's fee was reasonable).

The record on appeal includes the common-law record and transcripts of hearings that transpired on July 12, 2005, August 30, 2005, September 9, 2005, September 14, 2005, and November 2, 2005; but, it does not disclose what transpired at the August 2 hearing or provide the trial court's basis for its August 2 order. We have nothing to shed light on the court's reasons for excising the name of the college, preventing respondent from presenting evidence of the

parties' respective financial conditions, failing to consider all of the factors in section 513(b) in determining the allocation of tuition and college-related expenses, or failing to provide an evidentiary hearing. Without a record of the August 2 proceedings, we have no reason to conclude that the trial court did not properly base its judgment on the law and the evidence. See Foutch, 99 Ill. 2d at 391-92.

As to respondent's argument that the trial court abused its discretion by failing to provide an evidentiary hearing, the trial court did allow respondent to enter an offer of proof even though respondent never filed a motion to reconsider the ruling splitting tuition and college expenses. Regardless, we fail to see how an evidentiary hearing would have been helpful to respondent's case. The only evidence that respondent asserts the trial court failed to consider in allocating the costs of college under section 513(b) is an alleged account in Kiersten's name at Morgan Stanley worth $27,480, Kiersten's college fund valued at $7,059, Kiersten's annual income of $8,300, and the obligations respondent had to his new family, as well as his lack of a parental relationship with Kiersten.

The trial court stated that it considered the factors in section 513(b) in requiring that each party pay 50% of Kiersten's tuition and college-related expenses. The trial court also stated at the September 14 hearing that it had already determined the allocation, based on the August 2 hearing, but it allowed respondent to make an offer of proof. To the extent that the trial court based its decision on evidence presented at the August 2 hearing, we must affirm that decision. Further, even though the evidence of Kiersten's Morgan Stanley account or the college fund may not have been considered by the trial court in allocating the expenses, we would not find that the trial court abused its discretion.

A trial court's decision to award educational expenses will not be reversed absent an abuse of discretion. In re Marriage of Hillebrand, 258 Ill. App.3d 835, 840-41 (1994). In making the decision whether to order the payment of educational expenses under section 513(b) of the Act, the court should consider all "reasonable and necessary" factors, including: (1) the financial resources of both parents; (2) the standard of living the child would have enjoyed had the marriage not been dissolved; (3) the resources of the child; and (4) the child's academic performance. 750 ILCS 5/513(b) (West 2004).

In this case, the evidence does not show that the college fund actually was available. Petitioner testified at the September 14 hearing that she probably spent the money in the college fund even though she had hoped to save those funds for Kiersten's college expenses. As to the Morgan Stanley account, petitioner testified that there was money in the account. However, the court ordered that $10,000 be taken out of this account to apply to college expenses. Thus, the court utilized some of Kiersten's funds in allocating costs. Further, the court is not obligated to utilize Kiersten's own funds before respondent is held to make a contribution. See Larsen v. Larsen, 126 Ill. App. 3d 1072, 1074 (1984). We note also that, while a court should not order a party to a marital dissolution to pay more for educational expenses than he or she can afford (In re Marriage of Thurmond, 306 Ill. App. 3d 828, 834 (1999)), nowhere before the trial court did respondent articulate why he would be unable to make a 50% contribution.

The only issue under this category that merits our complete review is respondent's assertion that, because the language of section 513(a)(2) of the Act entitles him to "the child's academic transcripts," then the name of the college must be included in the transcripts and must therefore be disclosed. Because this involves the interpretation of a statute, it is a question of

law, and the lack of a complete record does not bar our review, as it is de novo. Midstate Siding & Window Co. v. Rogers, 204 Ill. 2d 314, 319 (2003).

In answering this question, we are guided by established principles of statutory construction. The primary rule of statutory construction is to ascertain and give effect to the intent of the legislature. Bridgestone/Firestone, Inc. v. Aldridge, 179 Ill. 2d 141, 149 (1997). To do so, we examine the language of the statute, the most reliable indicator of the legislature's objectives in enacting the law. Michigan Avenue National Bank v. County of Cook, 191 Ill. 2d 493, 504 (2000). We afford the language of the statute its plain and ordinary meaning (Michigan Avenue National Bank, 191 Ill. 2d at 504) and construe the statute as a whole (Sylvester v. Industrial Comm'n, 197 Ill. 2d 225, 232 (2001)). Where the language of the statute is clear and unambiguous, the only legitimate function of the court is to enforce the law as enacted by the legislature. Henrich v. Libertyville High School, 186 Ill. 2d 381, 391 (1998). It is never proper for the court to depart from the plain language of the statute by reading into it exceptions, limitations, or conditions that conflict with the intent of the legislature. Bridgestone, 179 Ill. 2d at 149. There is no rule of statutory construction that authorizes the court to declare that the legislature did not mean what the plain language of the statute says. Henrich, 186 Ill. 2d at 391.

Section 513(a)(2) of the Act provides:

"If educational expenses are ordered payable, each parent and the child shall sign any consents necessary for the educational institution to provide the supporting parent with access to the child's academic transcripts, records, and grade reports. The consents shall not apply to any non-academic records." 750 ILCS 5/513(a)(2) (West 2004).

Although respondent interprets the language "academic transcripts" to mean that the name of the college must be revealed, we find no such intention in the statute. The statute does not provide that parents are entitled to receive any and all documents from a college that a child is attending; access is allowed only to the child's academic transcripts, records, and grade reports. Nonacademic records are specifically exempted. Thus, we cannot hold that section 513(a)(2) mandates that the name of a college must be disclosed to a parent. Accordingly, we reject respondent's argument that he is entitled to the name of the school, pursuant to the alleged mandate of the statute. Having determined that there is no mandate, we are left with respondent's argument that the trial court abused its discretion in failing to order that the name of the college be released for reasons other than section 513(a)(2). We have previously found this contention waived as not properly preserved and presented to this court for review.

## II. Determining the Amount of College-Related Expenses

Under this category, respondent contends that the parties' distribution of college-related expenses is against the manifest weight of the evidence. On February 10, 2006, the trial court ordered respondent to pay $5,539 after his payment of $5000, for a total of $10,539 for the first year of college. Respondent points out that on August 2, the trial court ordered respondent to pay 50% of the tuition, books, and room and board, after deduction of any grants or scholarships. Respondent asserts that the court's calculation assumes that the total first year of college amounts to $21,078, after deducting any grants or scholarships, but that the evidence is contrary to the court's order. Respondent points out that petitioner admitted that the total cost for the first year was $20,272, including incidental expenses and not including Kiersten's federal direct subsidized loan or scholarship aid.

Respondent refers to evidence noted in the August 2 order and at the hearing on September 14 and does not assist us in our review, as the hearing that yielded the order of which respondent now complains was conducted on February 10, 2006. Again, respondent has failed to provide any record concerning what transpired on February 10, and, thus, we must presume that the trial court's calculations relating to the evidence presented at the hearing are correct. See In re Parentage of Melton, 321 Ill. App. 3d 823, 829 (2001). Accordingly, we affirm the trial court's order of February 10, 2006.

### III. Denying Respondent's Second Amended Petition for DNA Testing

Under this category, respondent contends that the trial court erred in dismissing his second amended petition for DNA testing regarding his assertion that he is not the father of Kiersten and Ashlea. We find no error for several reasons.

Respondent argues that the trial court improperly dismissed his second amended petition for DNA testing as time-barred. Initially, we note that the trial court did not expressly dismiss the second amended petition as untimely, instead denying it as "baseless." In any event, respondent's argument is without merit. The statute of limitations under the Parentage Act provides:

"An action to declare the non-existence of the parent and child relationship brought under subsection (b) of Section 7 of this Act shall be barred if brought later than 2 years after the petitioner obtains knowledge of relevant facts. The 2-year period for bringing an action to declare the non-existence of the parent and child relationship shall not extend beyond the date on which the child reaches the age of 18 years. Failure to bring an action within 2 years shall not bar any party from asserting a defense in any

action to declare the existence of the parent and child relationship." 750 ILCS 45/8(a)(3) (West 2004).

We note that, when petitioner raised the statute of limitations in her motion to dismiss under section 2--619(a)(5) of the Code of Civil Procedure (735 ILCS 5/2--619(a)(5) (West 2004)), respondent did not file a response. A party may raise a statute of limitations issue in a motion to dismiss. Hermitage Corp. v. Contractors Adjustment Co., 166 Ill. 2d 72, 84 (1995). When a party does so, the opposing party must provide enough facts to avoid application of the statute of limitations. Hermitage, 166 Ill. 2d at 84. Because respondent never filed a response to the motion and there is no testimony in the record regarding this issue, respondent has not alleged sufficient facts to avoid application of the statute of limitations.

Further, regarding the statute of limitations issue, petitioner alleged that blood testing in 1990 showed that there was a 99.99% chance that respondent was the father of Kiersten and Ashlea. Since respondent admitted that this "knowledge of relevant facts" existed in 1990 (see Roark v. Macoupin Creek Drainage District, 316 Ill. App. 3d 835, 847 (2000)), the request for DNA testing must fail as time-barred by the applicable statute of limitations. Other than the passage of time, respondent does not offer any reasons why the 1990 tests were unreliable or how his as-yet unspecified modern tests would be more reliable. In fact, he does not even offer what tests were actually performed and what new ones he wants.

## IV. Imposing Rule 137 Sanctions

Respondent last contends that the trial court abused its discretion in imposing sanctions against him and in failing to make explicit findings of fact and law explaining the basis for its decision. We disagree.

Generally, the decision to grant or deny sanctions under Rule 137 is left to the trial court's discretion. Technology Innovation Center, Inc. v. Advanced Multiuser Technologies Corp., 315 Ill. App. 3d 238, 244 (2000). In O'Brien & Associates, P.C. v. Tim Thompson, Inc., 274 Ill. App. 3d 472, 482-83 (1995), we held that, whether a trial court imposes or declines to impose Rule 137 sanctions, it must set forth the reasons and basis for its decision.

We first find that, in this case, the trial court set forth adequate reasons upon which we can make an informed and reasoned review of its imposition of sanctions. Following oral argument regarding petitioner's motion to strike respondent's petition for DNA testing, the trial court entered an order on November 2, 2005, denying the petition for DNA testing, finding the petition to be baseless and frivolous, and further "reserving the issue of sanctions." On November 16, the trial court entered another order after an agreement was reached between the parties for respondent to pay $1,009 for petitioner's attorney fees as sanctions regarding the petition for DNA testing, without waiving the right to appeal the order of sanctions. Thus, the November 2 order imposed sanctions for filing a petition that was baseless and frivolous. The November 16 order merely set forth the amount awarded.

We further find that the trial court did not abuse its discretion in awarding sanctions, for the following reasons. Respondent filed a petition for DNA testing three times even though, inter alia: (1) he did not have a record of the original tests performed in 1990; (2) he did not deny petitioner's allegation that a blood test performed in 1990 revealed that the children were respondent's; (3) the issue of paternity had previously been determined by the court; and (4) he had never filed a section 2--1401 petition based on new evidence that the children were not his.

For these reasons, the judgment of the circuit court of Lake County is affirmed.

Affirmed.

McLAREN and BOWMAN, JJ., concur.