2015 IL App (1st) 133149

THIRD DIVISION
September 30, 2015

Nos. 1-13-3149, 1-14-1082, 1-14-2151 (cons.)

| | | |
|---|---|---|
| COUNTRYWIDE HOME LOANS SERVICING, LP, | ) ) ) | Appeal from the Circuit Court of Cook County |
| Plaintiff-Appellee, | ) ) | |
| | ) | Nos. 08 CH 19406 |
| v. | ) | 08 D 5204 |
| | ) | |
| DAVID CLARK; ROBIN CLARK, a/k/a Robin D. Clark; CITICORP VENDOR FINANCE, INC.; McCANN INDUSTRIES, INC.; THE HANOVER INSURANCE GROUP, INC. s/i/i to The Hanover Insurance Company; COUNTRYWIDE HOME LOANS, INC.; STANLEY H. BOYD; UNKNOWN OWNERS; and NONRECORD CLAIMANTS, | ) ) ) ) ) ) ) ) ) ) | The Honorable John H. Ehrich Judge Presiding. |
| Defendants-Appellants. | ) | |

PRESIDING JUSTICE MASON delivered the judgment of the court, with opinion.
Justices Fitzgerald Smith and Lavin concurred in the judgment and opinion.

**OPINION**

¶ 1      In this consolidated case, defendants Stanley Boyd and Robin Clark appeal separate orders entered by the trial court relating to mortgage foreclosure proceedings initiated by the mortgage lender Countrywide Home Loans, Inc. (Countrywide), which later assigned the mortgage to plaintiff Countrywide Home Loans Servicing, LP (Countrywide Servicing). Boyd challenges the trial court's jurisdiction when it entered a default order against him asserting he was not properly served with the summons and complaint and seeks review of the trial court's denial of his motion to quash service of process. Clark appeals the trial court's order disbursing

proceeds from the sale of her prior marital home to Bank of America, N.A.[1] because she claims no evidence was offered supporting the bank's right to the proceeds to payoff the first mortgage on the home. Both Boyd and Clark claim that the trial court erred when it: (1) ruled on their motions without an evidentiary hearing and (2) refused to certify their proposed bystander's report. Finding no merit in Boyd's and Clark's separate and combined claims, we affirm.

¶ 2                                                     BACKGROUND

¶ 3        On April 26, 1999, husband and wife David and Robin Clark refinanced the mortgage on their marital home located at 6721 South Bennett Avenue in Chicago, Illinois. The Clarks executed a note with Countrywide in the principle amount of $322,150 secured by a mortgage on their home. The Clarks also executed a line of credit with Countrywide in the amount of $30,000, which was secured by a second mortgage on their home that was inferior to the first mortgage. On July 15, 2006, Boyd loaned money to Clark, his daughter, and secured his $71,500 loan with a mortgage recorded on the marital home. Boyd's mortgage was inferior to both of Countrywide's mortgages.

¶ 4        On May 28, 2008, Clark filed a petition for dissolution of marriage. A day later, Countrywide filed a complaint to foreclose the first mortgage, which had been in default since

---

[1] It is well settled that a court may take judicial notice of matters that are commonly known or facts that are not generally known but are readily verifiable from sources of indisputable accuracy. *Murdy v. Edgar*, 103 Ill. 2d 384, 394 (1984). More specifically, a reviewing court " 'may take judicial notice of a written decision that is part of the record of another court.' " *Bank of America, N.A. v. Kulesza*, 2014 IL App (1st) 132075, ¶ 21 (quoting *Aurora Loan Services, LLC v. Kmiecik*, 2013 IL App (1st) 121700, ¶ 37). We take judicial notice of our supreme court's decision in *BAC Home Loans Servicing, LP v. Mitchell*, 2014 IL 116311, ¶ 3, identifying BAC Home Loans Servicing, LP as the entity formerly known as Countrywide Home Loans Servicing, LP. Furthermore, this court in *Kulesza*, 2014 IL App (1st) 132075, ¶¶ 22-23, recognized that BAC Home Loans Servicing was a subsidiary of Bank of America by taking judicial notice of decisions from other jurisdictions finding BAC Home Loans Servicing had merged into Bank of America. Accordingly, Bank of America is successor by merger to BAC Home Loans Servicing f/k/a Countrywide Servicing.

December 2007. The principle balance due on the mortgage was $179,469.69, plus interest, costs, and fees. In addition to Clark and her husband, the complaint also named the following parties as defendants (collectively referred to as "other defendants") because they had an interest in or lien on the property: (1) Citicorp Vendor Finance, Inc.; (2) McCann Industries, Inc.; (3) The Hanover Insurance Group, Inc.; (4) Countrywide Home Loans, Inc. (second mortgage); (5) Boyd; and (6) unknown owners and nonrecord claimants. A summons was issued for each of the other defendants.

¶ 5        At 2:46 p.m. on June 17, 2008, Edward Soltan, a licensed special process server working for "Court Support," personally served Boyd with a copy of the summons and complaint at his residence located at 2420 Hunter Ave., Apt. 22E, Bronx, New York. Soltan completed the affidavit of service listing his license number as 11-3629812 and describing Boyd as a black male, "approximate[ly] 57" years old. A notary witnessed Soltan's signature. Although Boyd filed nothing in the trial court to indicate his real age, he represents in his brief on appeal that he was 65 years old at the time he was purportedly served.

¶ 6        On July 15, 2008, Clark filed an appearance, answer to the foreclosure complaint and a motion to consolidate the divorce action with the foreclosure action because both proceedings involved her and her husband's interest in the marital home. On January 27, 2009, the trial court consolidated the foreclosure action into the pending divorce action in the domestic relations division. While the divorce proceedings were pending, the trial court directed Clark's husband to execute without prejudice a quit claim deed to Clark to facilitate her negotiations with Countrywide in the pending foreclosure action.

¶ 7        On April 23, 2009, the trial court entered the following orders: (1) granted Countrywide's motion to substitute Countrywide Servicing as plaintiff because the mortgage or servicing rights were sold and assigned to Countrywide Servicing; (2) granted Countrywide Servicing's motion

for summary judgment against Clark; (3) granted Countrywide Servicing's motion for judgment of foreclosure and sale in the amount of $209,932.21–inclusive of the principal balance, accrued interest, costs and attorney fees; (4) scheduled a sheriff's sale for August 17, 2010, with the right of redemption to expire on August 24, 2009; and (5) granted Countrywide Servicing's motion for default against the other defendants based on their failure to appear or plead.

¶ 8  Throughout the foreclosure proceedings, Clark sought to sell the property to a third party to avoid a sheriff's sale. The trial court stayed the sheriff's sale and lifted the stay numerous times while the proceedings were pending. On August 14, 2010, Clark received an offer in the amount of $225,000 to purchase the property. To facilitate the property's closing, Clark communicated with Bank of America to request a loan modification and payoff letters. But the buyer later cancelled the sale.

¶ 9  On February 1, 2011, the trial court entered an order directing that upon any sale of the residence, the net proceeds after payment of the two Bank of America mortgages and closing costs, would be held in escrow until further court order or agreement of the parties.

¶ 10  On February 1, 2012, Clark received a $342,500 cash offer to purchase the property with an original closing date scheduled for March 6, 2012; the closing was later rescheduled to May 16, 2012. Bank of America forwarded two payoff letters dated February 27, 2012, listing the current payoff balance of $302,797.49 for the first mortgage and $30,050.06 for the second mortgage. After receiving the payoff letters, Clark filed an emergency motion to receive correct payoff letters from the lender–whom she identified as Bank of America–asserting that the current payoff letters included excessive and unsubstantiated additional fees.

¶ 11  On April 6, 2012, the trial court entered an order authorizing the sale and directing proceeds from the sale to be deposited with the clerk of the circuit court until further order.

Bank of America, identifying itself as f/k/a Countrywide Home Loans, filed a motion to vacate the April 6 order that was entered without its knowledge or, in the alternative, clarify that the funds deposited with the clerk must be sufficient to fully pay the amounts itemized in the current payoff letters provided by Bank of America f/k/a Countrywide.  Bank of America asserted that it did not agree to a short sale of the property, and that a defendant in a foreclosure action may only redeem or sell property that is the subject of foreclosure by paying the plaintiff the full payoff amount.

¶ 12    On May 1, 2012, the trial court ordered the other defendants to execute a release of their liens recorded against the property inasmuch as the proceeds of the sale would be insufficient to satisfy those junior liens.

¶ 13    On the next day, the trial court entered an order staying the pending sheriff's sale to allow for the closing of the nonforeclosure sale.  The trial court also directed that all proceeds due to Bank of America to fully pay the first and second mortgages be deposited with the clerk.

¶ 14    On May 11, 2012, Boyd executed a release of his mortgage in the amount of $71,500.  Boyd's release included the following provision:

> "WHEREAS, the purchase price is insufficient to cover all liens, broker's fees and other related expenses, therefore the undersigned creditor has agreed to release his/her/its respective title, claims, to allow the closing of the property and [a]void a pending sheriff's sale but this agreement does no[t] release Robin Clark or David Clark from their indebtedness to the undersigned for any debts, obligations, or monetary claims as to the amount owed."

¶ 15   The nonforeclosure sale closed on May 16, 2012, and the net sale proceeds in the amount of $335,547.54 were deposited with the clerk of the circuit court.  On September 27, 2012, the trial court entered an order retaining jurisdiction regarding disbursement of the proceeds.

¶ 16   On October 15, 2012, the trial court entered a judgment of dissolution in the divorce proceedings.  As part of the judgment, David waived any interest in the proceeds from the sale of the property that were deposited with the clerk of the court, and he was released from any further liability for the property, including any liens and loans.  The judgment also allowed Clark to negotiate with Bank of America and the claimants who executed releases regarding disbursement of the sale proceeds.

¶ 17   On January 28, 2013, given that there were no outstanding issues remaining in the dissolution proceedings, the domestic relations judge severed the foreclosure action from the divorce action and transferred the foreclosure matter to the chancery division.

¶ 18   On March 15, 2013–10 months after the sale closed–Clark filed a motion to pay out proceeds from the sale in the amount of $342,500 and proposed the following distribution:

| | | |
|---|---|---|
| A. | Bank of America | $209,932.21 |
| B. | Supreme Minor Real Estate Services | $ 12,087.50 |
| C. | Prudential Rubloff | $ 8,462.50 |
| D. | Edward Williams | $ 10,000.00 |
| E. | Stanley Boyd | $ 97,017.79 |
| F. | Hanover Insurance Company | $ 5,000.00 |

As is obvious from Clark's distribution schedule, she proposed that Bank of America's (as successor-in-interest to Countrywide Servicing) lien be frozen at the amount stated in the judgment of foreclosure entered four years earlier ($209,932.21), but that her father's loan accrue

interest of more than $25,000. Clark also requested a hearing to address: (1) the validity of Countrywide's–now Bank of America's–second mortgage, asserting that Countrywide was defaulted as to that mortgage on April 23, 2009 and (2) the reasonableness of Bank of America's charges.

¶ 19   On May 17, 2013, Countrywide Servicing filed its own motion seeking distribution of the proceeds of the sale and requested turnover of escrow funds in the amount of $327,399.14 to Bank of America to payoff the remaining balance of the first mortgage or, in the alternative, to lift the stay on the foreclosure sale. The trial court ordered briefing on both motions and set the matter for hearing on August 21, 2013.

¶ 20   Bank of America, again identifying itself as successor-in-interest to Countrywide Servicing, filed a response to Clark's motion for payout disputing that it was only entitled to the $209,932.21 judgment amount entered in 2009 because interest and costs did not stop accruing on the judgment date. Clark responded to Bank of America's motion asserting that the fees disclosed in the most recent payoff letters were excessive and she had requested short sale payoff letters from Bank of America before the closing, but it failed to timely provide them. Clark claimed she sold the property under the representation that the sale would be a short sale and Bank of America would receive the judgment amount from the sale.

¶ 21   On January 30, 2013, 4½ years after he was served and more than six months after he released his lien on the property, Boyd filed a motion to quash service of process. Boyd renoticed his motion on July 25, 2013, and asserted service was defective because: (1) no order was entered appointing a special process server to serve a defendant residing outside of Illinois; (2) no summons or complaint was tendered to him or a member of his household; and (3) he was not 57 years old as reflected in the affidavit of service. Bank of America, identifying itself as successor-in-interest to Countrywide Servicing, responded to Boyd's motion and asserted that:

(1) Boyd was personally served; (2) Boyd submitted to the court's jurisdiction by securing his loan with property located in Illinois; (3) Boyd released his mortgage recorded against the property; and (4) no court order was required to serve an out-of-state defendant. In his reply, Boyd raised new arguments, asserting that: (1) the license number specified in the process server's affidavit was not assigned to Soltan or any known individual; (2) an entity known as "Court Support" was not listed in New York's corporate listing and professional licensing division; and (3) Soltan's contact information was not provided to verify the information included in the affidavit. Boyd conceded that he was subject to jurisdiction by virtue of his note and mortgage secured by property located within the state, but argued that he had not submitted himself to the court's jurisdiction because he did not waive service of process nor was service properly effected.

¶ 22    After the motion was briefed, Clark filed an emergency motion on the scheduled August 21 hearing date to continue the hearing requesting leave of court to conduct discovery on the cross-motions for payout, and to allow the trial court to rule on Boyd's motion to quash. The trial court granted Clark's motion for a continuance stating that "All matters are entered and continued to September 23, 2013."

¶ 23    On September 23, 2013, with all counsel present but without arguments by counsel or an evidentiary hearing, the trial court entered an order: (1) denying Boyd's motion to quash; (2) denying Clark's motion to pay out proceeds; (3) granting Countrywide Servicing's motion to turnover escrow funds to Bank of America; and (4) directing the clerk of the circuit court to pay the full amount held in escrow–$335,547.54–to Bank of America. The proceeds of the sale were sufficient to satisfy only amounts due on the first mortgage, which, by the time of the payout, totaled $335,600.

¶ 24    Boyd and Clark timely filed a joint notice of appeal on September 24, 2013. The trial court denied Boyd's and Clark's joint emergency motion to stay enforcement of the court's turnover order pending appeal. On January 17, 2014, Boyd and Clark filed a joint motion to approve a bystander's report of the September 23, 2013 proceedings, which the court denied on February 3, 2014, as untimely, stating it had no discretion to hear the motion. The trial court also denied the joint motion to vacate and/or reconsider that ruling, which Boyd and Clark likewise appeal.

¶ 25                                    ANALYSIS

¶ 26                             A.  Dismissal of Appeal

¶ 27    Countrywide Servicing (as the named plaintiff-appellee) renews its request to dismiss Boyd's and Clark's consolidated appeal based mainly on their failure to comply with various filing deadlines. This court previously granted Countrywide Servicing's motion to dismiss based on defendants' failure to comply with time deadlines, but we later vacated the dismissal pursuant to Boyd's and Clark's joint motion to vacate. Although we note the numerous extensions of time granted to Boyd and Clark during the pendency of this appeal and their failure to fully comply with prescribed time limits–which would be appropriate grounds for dismissal–we decline to dismiss their appeal that has now been fully briefed.

¶ 28                           B.  Boyd's Motion to Quash

¶ 29    Boyd claims the trial court lacked jurisdiction to enter the default order against him because he was not properly served. Boyd contends that deficiencies in the special process server's affidavit establish a jurisdictional defect and lack of a *prima facie* case of jurisdiction. Specifically, Boyd claims that: (1) Soltan's employer was not listed in New York's corporate listing or professional licensing divisions; (2) the license number Soltan listed on the affidavit

was not registered to a known individual; and (3) Soltan's identity could not be verified because the relevant information was not included in the affidavit. Boyd asserts that Soltan's affidavit should be discredited because of the noted deficiencies and the trial court should have accepted his own sworn statement that he was not served. We disagree.

¶ 30    This court reviews *de novo* the trial court's ruling on a motion to quash challenging the court's jurisdiction that was entered based on documentary evidence and without an evidentiary hearing. *Equity Residential Properties Management Corp. v. Nasolo*, 364 Ill. App. 3d 26, 31 (2006).

¶ 31    A court lacks jurisdiction if service upon a defendant was not effected properly and any default judgment based on defective service is void. *Bank of New York Mellon v. Karbowski*, 2014 IL App (1st) 130112, ¶ 12. Personal service outside Illinois is governed by section 2-208 of the Illinois Code of Civil Procedure (735 ILCS 5/2-208 (West 2008)), which provides:

> "The service of summons shall be made in like manner as service within this State, by any person over 18 years of age not a party to the action. No order of court is required. An affidavit of the server shall be filed stating the time, manner and place of service. The court may consider the affidavit, or any other competent proofs, in determining whether service has been properly made." 735 ILCS 5/2-208(b) (West 2008).

¶ 32    Boyd questions Soltan's credibility and the trustworthiness of his affidavit because the process server license number listed on the affidavit is not registered to Soltan, or apparently any known individual, and his employer–"Court Support"–does not appear in New York's business registries as a licensed private detective agency. But Boyd concedes not only that Soltan was a licensed process server in New York–directly rebutting his "non-existence of the person" claim,

but also that a special process server is not required to serve an out-of-state defendant. See *id*. Moreover, Boyd does not dispute that Soltan was not a party to the litigation or that he was over the age of 18. Likewise, nothing in the statute expressly requires inclusion of the process server's license number, or his or his employer's contact information for purposes of verifying the affiant's identity.

¶ 33    With respect to the alleged discrepancy in the approximate age Soltan listed in his return (57) and Boyd's actual age, Boyd provided no information to the trial court–not even in his affidavit supporting his motion to quash–that would have enabled the court to determine whether the difference in his stated age in Soltan's affidavit and his actual age was material. Thus, this issue is forfeited. *Vine Street Clinic v. Healthlink, Inc.*, 222 Ill. 2d 276, 301 (2006). In any event, even if we credit the representation in Boyd's brief on appeal, the eight-year difference is insignificant. See *Pineschi v. Rock River Reclamation District*, 346 Ill. App. 3d 719, 724 (2004) (finding a 12-year age discrepancy "not particularly remarkable"). Accordingly, the purported deficiencies regarding the information appearing in the affidavit are irrelevant for purposes of determining the validity of service.

¶ 34    In contrast, the time, manner and place of service constitute relevant information that must be included in the affidavit to determine whether service was properly effected. *Id*. A review of the affidavit reveals that this information was stated in full compliance with section 2-208(b). Notably, a notary also signed the affidavit of service witnessing Soltan's signature, and Boyd raises no claim that the notary's attestation was invalid. Nothing that Boyd asserts as defects in the affidavit renders the affidavit invalid or makes the lack of jurisdiction apparent. Bank of America (as successor-in-interest to Countrywide Servicing) was not required to file a counter-affidavit because Boyd's affidavit failed to set forth clear and convincing evidence to impeach the affidavit of service and overcome the presumption favoring Soltan's affidavit. *Paul*

*v. Ware*, 258 Ill. App. 3d 614, 617 (1994). Consequently, the trial court did not err in denying Boyd's motion to quash and the default order entered against him was valid.

¶ 35    Moreover, Boyd executed a release of his lien when it became apparent that the cash purchase price of the property was insufficient to cover all liens and agreed that the private sale would be free and clear of his title encumbrance. Thus, as Bank of America argued in its response to Boyd's motion to quash, Boyd no longer had an interest in the property when he filed his motion, which was more than six months after he executed his release and the private sale of the property closed. See *Glisson v. City of Marion*, 188 Ill. 2d 211, 219 (1999) (The principle of standing precludes individuals who have no interest in a controversy from bringing suit and assures that only parties with a real interest in the outcome of the controversy raise issues). Accordingly, Boyd's claims regarding insufficient service not only lack merit, but also are moot.

¶ 36                    C. Clark's Motion for Payout of Sale Proceeds

¶ 37    Clark claims that the trial court erred in granting Countrywide Servicing's motion to release escrow funds to Bank of America because there was no: (1) documentation assigning the mortgage and note to Bank of America; (2) proof regarding compliance with statutory requirements under section 1641(g) of the Truth in Lending Act (15 U.S.C. § 1641(g) (2012)) mandating disclosure of a new lender to a borrower; (3) court order granting Bank of America leave to join as a party to the lawsuit; (4) substitution of Bank of America as plaintiff; and (5) appearance by Bank of America. Clark also claims she had no prior knowledge that Countrywide Servicing would request the court to disburse the sale proceeds to Bank of America because the identity of the mortgage's and note's owner was not raised prior to entry of the order granting the motion for a turnover.

¶ 38      Because Clark raises the affirmative defense of Bank of America's lack of standing for the first time on appeal, she has forfeited review of that claim by this court. *Greer v. Illinois Housing Development Authority*, 122 Ill. 2d 462, 508 (1988) ("lack of standing in a civil case is an affirmative defense, which will be waived if not raised in a timely fashion in the trial court"). The record belies Clark's assertion that she did not know until the court's September 23, 2013 order that proceeds would be paid to Bank of America. Most significantly, Bank of America submitted numerous payoff letters identifying the payoff balance and itself as the beneficiary bank to receive the funds. Moreover, in multiple pleadings Clark acknowledged Bank of America's interest in the mortgages. In fact, as early as August 2010, Clark acknowledged Bank of America's entitlement to the sale proceeds because she requested Bank of America to submit a current payoff letter relating to the private sale of the property. Clark again in early 2012 requested a current payoff letter from the lender, whom she identified as Bank of America. Likewise, Clark conceded in her response to the motion for a turnover that Bank of America was successor-in-interest to Countrywide, *i.e.*, "Countrywide (now Bank of America)."

¶ 39      Importantly, Clark did not challenge Bank of America's entitlement to the sale proceeds during the underlying proceedings even though she challenged the monetary amount that should be paid to Bank of America, asserting the fees charged were unsubstantiated and excessive. There is no support for Clark's assertion that she was unaware of Bank of America's claimed interest in the mortgage recorded on the property; instead, the record demonstrates Bank of America's interest in the foreclosure proceedings had spanned over many years during lengthy litigation that involved Clark as an active participant. *Deutsche Bank National Trust Co. v. Snick*, 2011 IL App (3d) 100436, ¶ 9; see *Wells Fargo Bank, N.A. v. McCluskey*, 2013 IL 115469, ¶¶ 26, 31 (borrower seeking to vacate a judicial sale and underlying default judgment may not merely raise a meritorious defense to the complaint as support for a claim that justice

was not otherwise done after a motion to confirm a judicial sale has been filed). Thus, Clark has forfeited our review of her claim that the trial court erroneously ordered disbursement of the escrow funds to Bank of America and denied her motion for payout because Clark's standing claim was not raised during the proceedings in the trial court.

¶ 40 Clark also claims that Bank of America was not entitled to sale proceeds to payoff the second mortgage because Countrywide Servicing executed a release of that mortgage. Bank of America's May 31, 2013 payoff letter reflects a balance of $335,600 required to release the first mortgage lien as of June 20, 2013. Given that the sale proceeds of $335,547.54 were not sufficient to satisfy the first mortgage, we need not address this claim.

¶ 41                                             D. Due Process

¶ 42 Both Boyd and Clark next claim they were denied due process because the trial court did not hold a hearing on their motions (motion to quash and motion to payout the sale proceeds, respectively) or allow discovery after it continued the matter to September 23 from the scheduled hearing date of August 21, 2013. Boyd and Clark acknowledge that the August 21, 2013 order continued all matters to September 23, 2013, but dispute that the order set the matter for a hearing on September 23.

¶ 43 Nothing in the order resetting the hearing date on the pending motions suggests that the continued date was for any purpose other than conducting a hearing. Thus, we reject the argument that Boyd and Clark were taken by surprise when the hearing took place on September 23, 2013. Moreover, Boyd's and Clark's motions were briefed and nothing in the issues they raised warranted an evidentiary hearing or discovery. See *CenterPoint Properties Trust v. Olde Prairie Block Owner, LLC*, 398 Ill. App. 3d 388, 400 (2010) (trial court did not err in denying a request for an additional evidentiary hearing where the parties submitted briefs on the pertinent

issue, defendant submitted an offer of proof, the trial court already considered the issue and an additional evidentiary hearing would serve no purpose other than delay the trial court's hearing on the motion). Consequently, the trial court properly ruled on Boyd's and Clark's fully briefed motions without an evidentiary hearing or discovery, either of which would have unnecessarily further delayed resolution of a foreclosure proceeding that had been ongoing for five years.

¶ 44                                    E.  Bystander's Report

¶ 45        Finally Boyd and Clark claim that the trial court erred in denying their (1) joint motion to approve a proposed bystander's report from the September 23, 2013 proceedings and (2) motion to reconsider that ruling. Boyd and Clark concede that the motion to approve the bystander's report was untimely, but assert the untimely filing was inadvertent and the product of their inability to schedule the motion for hearing before February 3, 2014.

¶ 46        Under Illinois Supreme Court Rule 323(c) (eff. Dec. 13, 2005), a proposed bystander's report must be served on the parties within 28 days after the filing of a notice of appeal; within 14 days of that date any party may serve proposed amendments; and within 7 days thereafter the appellant shall present the proposed bystander's report to the trial court. Boyd and Clark filed their joint notice of appeal on September 24, 2013, but did not file the motion to approve a proposed bystander's report until January 17, 2014, nearly four months later. Importantly, Boyd and Clark do not claim they requested an extension of time to file the bystander's report even though such an extension is permitted under Rule 323(e) (Ill. S. Ct. R. 323(e) (eff. Dec. 13, 2005)). Thus, the trial court properly denied the motion to approve the proposed bystander's report because Boyd and Clark failed to comply with Rule 323(c)'s filing requirements–a rule that carries the force and effect of law and is not a mere suggestion. *Bright v. Dicke*, 166 Ill. 2d 204, 210 (1995); *In re Marriage of Thomsen*, 371 Ill. App. 3d 236, 241 (2007); *People v. Jackson*, 94 Ill. App. 3d 747, 748 (1981); *Department of Transportation v. Drobnick*, 54 Ill. App.

3d 987, 992 (1977). Boyd and Clark request this court to excuse their disregard for Rule 323(c)'s filing requirements, but we may not do so. *Dicke*, 166 Ill. 2d at 210. Further, even if we could ignore Rule 323's time requirements, we would be disinclined to do so here given Boyd and Clark's consistent disregard of deadlines under the rules.

¶ 47    Timeliness aside, Boyd and Clark assert that the lack of a bystander's report renders the record insufficient precluding an effective appeal. Contrary to their claim, the lack of transcripts or a bystander's report from the September 23 hearing did not impede our review because the record was sufficiently complete given that the issues presented are either questions of law or based on undisputed or indisputable facts contained in the record. Thus, Boyd and Clark suffered no prejudice from the lack of a bystander's report.

¶ 48                              CONCLUSION

¶ 49    None of the arguments advanced by Boyd and Clark on appeal have merit. Thus, we affirm in its entirety the judgment of the circuit court of Cook County.

¶ 50    Affirmed.