NOTICE
This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2020 IL App (4th) 190629-U

NO. 4-19-0629

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
February 7, 2020
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* B.L., a Minor | ) | Appeal from |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Vermilion County |
| Petitioner-Appellee, | ) | No. 17JA61 |
| v. | ) | |
| Autumn W., | ) | Honorable |
| Respondent-Appellant). | ) | Thomas M. O'Shaughnessy, |
| | ) | Judge Presiding. |

JUSTICE HOLDER WHITE delivered the judgment of the court.
Justices Cavanagh and Harris concurred in the judgment.

**ORDER**

¶ 1     *Held*:   The appellate court affirmed, concluding the trial court's fitness and best-interest findings were not against the manifest weight of the evidence.

¶ 2     In September 2019, the trial court terminated the parental rights of respondent mother, Autumn W., as to her son, B.L. (born October 11, 2017).  Respondent father is not a party to this appeal.  On appeal, respondent argues the court's fitness and best-interest findings were against the manifest weight of the evidence.  For the following reasons, we affirm.

¶ 3                              I. BACKGROUND

¶ 4                              A. Initial Proceedings

¶ 5     In October 2017, the State filed a petition for adjudication of wardship, alleging B.L. was neglected where (1) B.L.'s system contained an amount of a controlled substance at birth (705 ILCS 405/2-3(1)(c) (West 2016)), (2) respondent subjected B.L. to an injurious

environment due to her substance abuse (705 ILCS 405/2-3(1)(b) (West 2016)), and (3) B.L.'s environment was injurious to his welfare because respondent failed to correct the conditions that led her two older children to come into care (see Vermilion County case Nos. 16-JA-08 and 16-JA-09) (705 ILCS 405/2-3(1)(b) (West 2016)). After a shelter care hearing, the trial court granted the Department of Children and Family Services (DCFS) temporary custody of B.L.

¶ 6        At a December 2017 adjudicatory hearing, respondent stipulated to the allegations of neglect in count I of the State's petition. In a February 2018 dispositional order, the trial court (1) found respondent unfit, (2) made B.L. a ward of the court, and (3) granted DCFS guardianship and custody.

¶ 7                              B. Termination Proceedings

¶ 8        In October 2018, the State filed a petition to terminate respondent's parental rights. The State alleged respondent (1) failed to maintain a reasonable degree of interest, concern, or responsibility as to B.L.'s welfare (750 ILCS 50/1(D)(b) (West 2016)); (2) failed to make reasonable efforts to correct the conditions that were the basis of the removal of B.L. from respondent nine months after an adjudication of neglect, specifically January 5, 2018, to October 5, 2018 (750 ILCS 50/1(D)(m)(i) (West 2016)); (3) failed to make reasonable progress toward the return of B.L. within nine months after an adjudication of neglect, specifically January 5, 2018, to October 5, 2018 (750 ILCS 50/1(D)(m)(ii) (West 2016)); and (4) deserted B.L. for more than three months preceding the commencement of this action (750 ILCS 50/1(D)(c) (West 2016)).

¶ 9                              1. *Fitness Hearing*

¶ 10        In May 2019, the trial court conducted a bifurcated hearing on the petition for termination of parental rights, first considering respondent's fitness. The parties presented the following relevant testimony.

¶ 11                           a. Tia Manierre

¶ 12        Tia Manierre worked as the Children's Home and Aid caseworker for respondent from June 2017 to January 2019. Manierre testified that respondent completed an integrated assessment. Services required of respondent included substance-abuse treatment, parenting education, mental health and counseling services, and domestic-violence treatment. In addition, respondent needed to maintain stable housing and employment.

¶ 13        Respondent successfully completed inpatient treatment for substance abuse but relapsed a week later. Although respondent periodically attended outpatient substance-abuse treatment, she never successfully completed her substance-abuse services. Manierre testified respondent sometimes participated in drug drops and the last drug drop, completed in February 2018, tested positive for marijuana and methamphetamine. Respondent completed parenting classes in January 2019. Respondent failed to complete any other recommended services.

¶ 14        Respondent only attended one visit with B.L. during the relevant nine-month period and failed to maintain regular contact with Manierre. Manierre did testify that respondent asked for pictures of B.L. and, at one point, respondent sent B.L. cards.

¶ 15                        b. Trial Court's Findings

¶ 16        After hearing the evidence, the trial court found, by clear and convincing evidence, respondent unfit on four separate grounds. The court noted substance abuse was the primary issue respondent needed to fix. However, respondent only remained clean during her inpatient treatment and then relapsed within a week after leaving treatment. The court also found

respondent needed mental health counseling but that she never obtained a referral for mental health counseling. In September 2019, the trial court entered a finding of parental unfitness.

¶ 17                                    2. *Best-Interest Hearing*

¶ 18            According to the docket, in September 2019, the trial court held a separate best-interest hearing. No transcript of the best-interest hearing is provided in the record. According to the docket, the trial court found it was in B.L.'s best interest to terminate respondent's parental rights. Subsequently, the court entered a dispositional order after a finding of parental unfitness. In the order, the court found that it was in B.L.'s best interest to terminate respondent's parental rights and noted its consideration of the relevant best-interest factors. The court found B.L. had developed and maintained a bond with his foster family and that no bond existed between B.L. and respondent.

¶ 19            This appeal followed.

¶ 20                                    II. ANALYSIS

¶ 21            On appeal, respondent argues the trial court erred in finding respondent to be an unfit parent and terminating her parental rights. We address these arguments in turn.

¶ 22                                    A. Fitness Finding

¶ 23            In a proceeding to terminate parental rights, the State has the burden of proving parental unfitness by clear and convincing evidence. *In re Jordan V.*, 347 Ill. App. 3d 1057, 1067, 808 N.E.2d 596, 604 (2004). In making a determination, the court considers whether the parent's conduct falls within one or more of the unfitness grounds described in section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2016)). Evidence of unfitness based on any ground enumerated in section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2016)) is enough to support a finding of unfitness. *In re C.W.*, 199 Ill. 2d 198, 210, 766 N.E.2d 1105, 1113 (2002).

A reviewing court will not overturn the trial court's finding of unfitness unless it is against the manifest weight of the evidence. *Jordan V.*, 347 Ill. App. 3d at 1067. The trial court's decision is given great deference due to "its superior opportunity to observe the witnesses and evaluate their credibility." *Id.*

¶ 24    The trial court found respondent unfit on four different grounds: (1) failure to maintain a reasonable degree of interest, concern, or responsibility as to B.L.'s welfare (750 ILCS 50/1(D)(b) (West 2016)); (2) failure to make reasonable efforts to correct the conditions that were the basis of the removal of B.L. from respondent nine months after an adjudication of neglect, specifically January 5, 2018, to October 5, 2018 (750 ILCS 50/1(D)(m)(i) (West 2016)); (3) failure to make reasonable progress toward the return of B.L. within nine months after an adjudication of neglect, specifically January 5, 2018, to October 5, 2018 (750 ILCS 50/1(D)(m)(ii) (West 2016)); and (4) desertion for more than three months preceding the commencement of the action (750 ILCS 50/1(D)(c) (West 2016)). We turn first to the reasonable-progress grounds.

¶ 25    The trial court's finding that respondent failed to make reasonable progress toward the return of B.L. within nine months following the adjudication of neglect was not against the manifest weight of the evidence. Reasonable progress is measured by an objective standard that considers the progress made toward the goal of returning the child to the parent. *In re M.A.*, 325 Ill. App. 3d 387, 391, 757 N.E.2d 613, 617 (2001). Specifically, reasonable progress includes a parent's compliance with service plans and court directives, in light of the condition that gave rise to the removal of the child. *In re C.N.*, 196 Ill. 2d 181, 216, 752 N.E.2d 1030, 1050 (2001). A parent has made reasonable progress when "the progress being made by a parent to comply with directives given for the return of the child is sufficiently demonstrable and

of such quality that the court, in the near future, will be able to order the child returned to parental custody." (Emphasis and internal quotation marks omitted.) *In re F.P.*, 2014 IL App (4th) 140360, ¶ 88, 19 N.E.3d 227.

¶ 26 During the relevant time period (January 5, 2018, through October 5, 2018), respondent's service plans required (1) substance-abuse treatment, (2) parenting education, (3) mental health and counseling services, (4) domestic-violence treatment, and (5) respondent maintain stable housing and employment. The evidence established respondent completed parenting classes in January 2019, after the relevant nine-month period. Further, respondent completed inpatient treatment for substance abuse but relapsed a week later and sporadically attended outpatient substance-abuse treatment. Respondent failed a drug drop in February 2018, where she tested positive for marijuana and methamphetamine. Thus, respondent never completed the substance-abuse treatment requirement. The evidence further established respondent failed to obtain a referral for mental-health counseling or domestic-violence treatment. Finally, respondent only visited B.L. once during the relevant nine-month period.

¶ 27 Respondent argues she made reasonable progress because she was working on her substance-abuse issues and DCFS did not allow her to participate in services until she worked on her substance-abuse issues. The State argues DCFS never stated that it would prohibit respondent from participating in services until she worked on her substance-abuse issues. Rather, the State asserts respondent's argument is from a report in the record where Manierre informed respondent that "it would be best if she focus[ed] on parenting classes and substance[-]abuse treatment before beginning other services." We agree with the State that nowhere in the record did DCFS inform respondent she must work on her substance-abuse issues before engaging in other services.

¶ 28 Absent in the record is any indication that the court, in the near future, would have been able to return B.L. to respondent. Given respondent's failure to complete the required services, we cannot say the trial court's determination respondent failed to make reasonable progress toward having B.L. returned to her care within nine months following the adjudication of neglect was against the manifest weight of the evidence. Because we have upheld the trial court's findings as to one ground of unfitness, we need not review the other grounds. See *In re D.H.*, 323 Ill. App. 3d 1, 9, 751 N.E.2d 54, 61 (2001).

¶ 29                                   B. Best-Interest Finding

¶ 30 Once the trial court determines a parent to be unfit, the next stage is to determine whether it is in the best interest of the minor to terminate parental rights. *In re Jaron Z.*, 348 Ill. App. 3d 239, 261, 810 N.E.2d 108, 126 (2004). The State must prove by a preponderance of the evidence that termination is in the best interest of the minor. *Id.* The trial court's finding will not be overturned unless it is against the manifest weight of the evidence. *Id.* at 261-62.

¶ 31 Respondent argues that because she was unable to timely complete substance-abuse treatment and was not allowed visits with B.L. until her substance-abuse issues were controlled, she was unable to bond with B.L. However, respondent failed to provide this court with a record of the September 2019 best-interest hearing, and therefore respondent failed to submit a complete record to this court.

¶ 32 Illinois Supreme Court Rule 323(a) provides "A report of proceedings may include evidence, oral rulings of the trial judge, a brief statement of the trial judge of the reasons for his decision, and any other proceedings that the party submitting it desires to have incorporated in the record on appeal. The report of proceedings shall include all the evidence pertinent to the issues on appeal." Ill. S. Ct. R. 323(a) (eff. July 1, 2017).

"Rule 323, like the other supreme court rules governing appeals, is not a mere suggestion. [Citation.] Rather, the rule has the force and effect of law and is binding on litigants as well as the courts. [Citation.] As a consequence, when a report of proceedings, or a substitute, is essential to resolving an appeal and the appellant has failed to provide this court with such a record, we must presume that the trial court followed the law and had a sufficient factual basis for its ruling." *In re Marriage of Thomsen*, 371 Ill. App. 3d 236, 241, 872 N.E.2d 1, 6 (2007).

¶ 33 Here, respondent fails to provide the transcript of the September 2019 best-interest hearing in the record on appeal. Therefore, we must presume the trial court followed the law and had a sufficient basis for its ruling. Moreover, the trial court in a dispositional order after a finding of parental unfitness stated the court considered the relevant best-interest factors (705 ILCS 405/1-3(4.05) (West 2016)) in making its decision that it was in B.L.'s best interest to terminate respondent's parental rights.

¶ 34 Accordingly, we conclude the trial court's finding it was in B.L.'s best interests to terminate respondent's parental rights was not against the manifest weight of the evidence.

¶ 35                                    III. CONCLUSION

¶ 36 For the reasons stated, we affirm the trial court's judgment.

¶ 37 Affirmed.