2025 IL App (2d) 240071-U
No. 2-24-0071
Order filed March 12, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | |
| | ) | |
| BRENDAN H. MOEHRING, | ) | Appeal from the Circuit Court |
| | ) | of Kendall County. |
| Petitioner-Appellee, | ) | |
| | ) | |
| v. | ) | No. 18-D-262 |
| | ) | |
| ANN L. MOEHRING, | ) | Honorable |
| | ) | Jody P. Gleason, |
| Respondent-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE HUTCHINSON delivered the judgment of the court.
Justices Birkett and Mullen concurred in the judgment.

**ORDER**

¶ 1    *Held*: (1) The trial court did not err in finding Ann in contempt for failing to pay summer 2022 tuition as she willfully refused to pay tuition without valid excuse; (2) the trial court erred in finding Ann in contempt for failing to pay fall 2022 tuition and expenses where Ann did pay the amount owed for fall 2022 tuition and there was a legitimate question as to the obligations of the parties as to the fall 2022 expenses; (3) the trial court erred in including amounts due for spring 2023 tuition and expenses in calculating the purge amount; (4) the trial court did not err in declining to credit Ann for the $4,334 tuition refund received by Elle in March 2022; and (5) the trial court erred in not requiring consent forms to be signed by all parties for parental access to Elle's grades. Affirmed in part; reversed in part; vacated and remanded with instructions in part.

¶ 2    At issue here is whether the trial court erred in holding Ann in contempt for failure to pay certain educational expenses for her non-minor daughter, as required by the divorce judgment entered on March 21, 2021. Ann argues the contempt finding was improper, that the trial court's calculations for the amount owed were incorrect, and that other findings made by the trial court were in error. For the following reasons, we affirm in part, reverse in part, and vacate and remand in part, with instructions.

¶ 3                               I. BACKGROUND

¶ 4    Brendan and Ann Moehring were married on August 28, 1999. Over the course of the marriage, they had two children: Ellouise (Elle) (born in 2002) and Sam (born in 2005). On August 27, 2018, Brendan filed for divorce. The matter proceeded until March 11, 2021, when the trial court entered a judgement for dissolution of marriage. Of note, the judgment contained the following provision: "By stipulation of the parties, college expenses as set forth in the statute shall be divided 1/3 to petitioner, 1/3 to respondent and 1/3 to the child. This shall apply to both children."

¶ 5    Elle started college at Purdue University in 2020. All parties apparently paid their 1/3 of the college expenses as required by the divorce judgment until summer 2022. On October 31, 2022, Brendan filed a petition for rule to show cause alleging that Ann had failed to pay Elle's college expenses for summer and fall 2022. Ann subsequently filed a motion to modify contribution to college expenses, seeking to terminate her obligation to contribute towards Elle's college expenses until she provided signed consent forms, proof of her cumulative grade point average, proof of actual expenses, and "settle[d] [Ann's] outstanding credits due." She also sought to have an order entered admonishing Brendan to stop interfering with Ann's communications with Elle, requiring Brendan to pay Ann's attorney's fees, and terminating Ann's obligation to pay

Elle's educational expenses once she had completed 120 credit hours. Both matters proceeded to hearing on August 15, 2023.

¶ 6                              A. Ann's Testimony on August 15, 2023

¶ 7     At the hearing, Ann testified as follows. The judgment for dissolution of marriage was granted on March 21, 2021, and it contained a provision allocating responsibility for contribution to college expenses of the parties' two children. The provision specifically read "by stipulation of the parties, college expenses as set forth in the statute should be divided a third to petitioner, a third to respondent, and a third to the child." Elle's tuition and expenses for her first two years of school were paid without issue. Ann became aware of educational costs for summer 2022 sometime after December 2021. Respondent's Exhibit No. 5 was entered into evidence, which showed Purdue's tuition for summer 2022 was $3,101.75 and Waubonsee's tuition for summer 2022 was $420. An email sent by Elle to Ann and Brendan on June 10, 2022, was also included. The email indicated that Elle had paid for summer tuition herself and requested reimbursement for Ann and Brendan's third be sent directly to her.

¶ 8     Respondent's Exhibit No. 6 was entered into evidence, which showed Purdue's tuition for fall 2022 was $15,422.

¶ 9     Respondent's Exhibit No. 7 was also entered into evidence, which was a spreadsheet that Elle had created showing her college expenses for fall 2021, spring 2022, summer 2022, and fall 2022. The summer 2022 section showed Purdue's tuition as $3,131.15[1] and Waubonsee's tuition as $400. The fall 2022 section showed Purdue's tuition as $14,822. It then listed the following living expenses: (1) $3,150 for rent ($525 per month); (2) $180 for Wi-Fi ($30 per month); (3)

_____

[1] This appears to be a typo, as Respondent's Exhibit No. 5 shows Purdue's tuition as $3,101.15.

$360 for electricity ($60 per month); (4) $1,000 for groceries ($250 per month); (5) $400 for restaurants/coffee ($100 per month); and (6) $300 for books. Ann testified that Elle had sent her this document for the first time in August 2022.

¶ 10    Ann had done no comparison between Purdue and the University of Illinois's tuition rates at the time the divorce judgment was entered. Since then, she has become familiar with the University of Illinois tuition rates, which, in the fall of 2022, would be $16,779 (the generic "base rate" for attendance at U of I). Respondent's Exhibit No. 2 was entered into evidence, which showed the University of Illinois estimated cost of attendance for fall 2022. Notably, the estimated cost of attendance for an engineering degree was $19,372 ($8,830 for tuition, $2,332 for fees, $6,360 for food and housing, $600 for books and supplies, and $1,250 for other expenses).

¶ 11    Ann did not pay for summer 2022 tuition because she had paid for those classes previously. In fall 2021, Elle had failed two classes which she then had to make up in summer 2022. Ann explained that she would not be paying for the classes twice, therefore, she refused to pay for summer 2022 tuition. Ann testified that she told Elle this in December 2021. After some discussion regarding summer 2022 living expenses, counsel for Brendan stipulated that he was not asking for living expenses for summer 2022.

¶ 12    Ann paid her portion of Elle's fall tuition at Purdue. She made a payment of $3,611 on January 8, 2023, and another payment in the amount of $6,270.34 on January 24, 2023, for a total amount of $9,881.34. Brendan's counsel stipulated to this fact. It was Ann's understanding that she was paying towards fall 2022 tuition and spring 2023 tuition with these payments. She did not pay towards Elle's living expenses as she was not provided with any proof of expenses. She had not contributed to Elle's living expenses as she had in prior years because Elle did not meet with her to "settle up." Elle had received a refund in March 2022 that she was entitled to 1/3 of.

Respondent's Exhibit No. 11 was admitted into evidence, which showed an ACH refund in the amount of $4,434 on March 8, 2022.

¶ 13    In addition to the refund, Ann wanted Elle to provide reimbursement for security deposits and an explanation for budget items such as "Starbucks" and "alcohol.[2]"  In terms of the security deposit, Elle did not receive one from the apartment she lived in from fall 2021 to spring 2022. Additionally, Ann wanted to meet with Elle prior to reimbursing her for expenses, but Elle refused. In August 2022, Ann and Elle's relationship was estranged. Respondent's Exhibit No. 3 was admitted into evidence, which consisted of text messages between Ann and Elle from August 2022 until October 2022.

¶ 14    Ann met with Elle on October 11, 2022, to "settle up." She drove to Purdue and they discussed the outstanding expenses. Ultimately, Ann did not tender payment at this meeting. They planned to meet again, so Elle could provide the documentation Ann had requested. One of the texts in Respondent's Exhibit No. 3 show that Elle texted Ann the following day to say that she didn't want to meet again because the prior meeting was too emotionally exhausting. They met again in December, after the filing of the petition for rule to show cause. Ann's testimony was cut short in order to allow Elle to testify that day, as she was leaving for school the following day and accordingly would be unable to come to court to testify.

¶ 15                    B. Elle's Testimony on August 15, 2023

¶ 16    Elle testified as follows. At the time of the hearing, she was a senior at Purdue University, on track to graduate that year with a degree in aerospace engineering. During summer 2022, she

---

[2] Neither "Starbucks" nor "alcohol" appear as line items in Respondent's Exhibit No. 7 (see *supra* ¶ 9), Elle's spreadsheet of expenses. It is unclear to what Ann refers.

took classes at both Waubonsee and Purdue in order to get ahead. The classes she had failed in fall 2021, she had retaken in spring 2022. While Elle's father, Brendan, had paid his 1/3 portion of the summer 2022 tuition, her mother, Ann, had not. The same went for fall 2022. For both semesters, Elle had provided her parents with a spreadsheet of her living expenses, that she updated each semester. Up until summer 2022, there had been no payment issues. Starting summer 2022, Ann started to refuse to pay. At this time, Elle and Ann had started to have relationship issues, but Elle did not think that would impact the court ordered payments.

¶ 17    Ann repeatedly asked for documents that Elle had already provided, such as rent documents, Wi-Fi bills, and utility bills.[3] Ann continued to refuse to remit payment for fall 2022 tuition and expenses. As a result of Ann's nonpayment, she had to take out additional loans to avoid being dropped from her classes.

¶ 18    Petitioner's Exhibit No. 1 was then entered into evidence, which was an email chain between Elle and her parents, advising that she would be dropped from her classes if payment was not received by August 29, 2022. Elle had requested that Ann pay tuition and expenses multiple times, and each time, she was met with additional requests for documentation that Elle had already provided. Ann would also ask questions about Elle's personal life and essentially require a

---

[3] Respondent's Exhibit No. 3, text messages between Elle and Ann, show that on August 27, 2022, Elle texted Ann indicating that she had emailed Ann the requested information on June 10, August 19, August 23, August 24, August 25, and August 26. It is not clear exactly what information Elle sent. Respondent's Exhibit No. 4, an email chain between Ann and Elle from August 25, 2022, to September 30, 2022, show that on September 10, 2022, Elle emailed Ann her lease agreement, Wi-Fi and electricity bills, and tuition statement. Petitioner's Exhibit 4, an email chain between Ann and Elle from January 3, 2023, to January 5, 2023, show that on January 3, 2023, Elle sent Ann a link to "the requested expense records." The link leads to a webpage with Elle's bank statements, lease agreement, proof of payment of Wi-Fi and electricity bills, and tuition information.

relationship with Elle before she would remit any sort of payment. Elle met with Ann once or twice in the time period in question, and neither meeting resulted in Ann remitting payment. Elle acknowledged that Ann had made payments in spring 2023 directly to Purdue in the amount of $9,881.34. Regarding the $4,334 refund Elle received in spring 2022, that amount was applied to Elle's 1/3 of tuition.

¶ 19    The matter concluded for the day, with neither Ann nor Elle finishing their testimony. The trial court continued the hearing to September 15, 2023. Elle appeared via "Zoom," a videoconferencing platform, to finish her testimony.

¶ 20                            C. Elle's Testimony on September 15, 2023

¶ 21    The cross-examination of Elle continued. Elle rehashed some of her prior testimony, stating that the classes she failed in winter 2021, she retook in spring 2022. The classes she took in summer 2022 were in order to get ahead so she could graduate on time. She also reiterated that in fall 2022, payment was due on August 29, 2022. Because Ann had not remitted payment, she had to take out approximately $11,000 in loans to cover tuition so that she would not be dropped from her classes. The application of the loans to her Purdue account blocked any further payments from being made. In terms of her living expenses, Elle had provided receipts to Ann as requested. When asked whether her living expenses were finalized for fall 2022, when she had sent her spreadsheet to Ann in the middle of the semester, Elle responded that her expenses were predicted from previous semesters. Elle had shown proof as requested of what had been incurred up until that point.

¶ 22    On redirect examination, Elle testified as follows. At the time of the hearing, she currently had a GPA of 3.35 and was anticipated to graduate on time with a baccalaureate degree in aeronautical and astronautical engineering. Prior to May 2022, Ann had paid tuition and college expenses without any issue. It was only after the breakdown in Elle and Ann's personal relationship

that these issues with payment started to occur. On recross, Elle testified that all classes she was currently taking were for her baccalaureate degree, not a higher degree.

¶ 23                    D. Ann's Testimony on September 15, 2023

¶ 24    After Elle concluded her testimony, Ann was called to resume testifying. She testified as follows. Ann did not want to pay for summer 2022 tuition, as Elle had already taken those classes. Regarding fall 2022, Ann had logged into the Purdue account on August 26 and 29 and attempted to pay. Each time, she was blocked. In terms of living expenses, Ann was waiting for invoices and receipts for all expenses. Elle had sent her documents that were insufficient proof, in her eyes. Ann had stopped reimbursing Elle in advance because she had broken Ann's trust. In previous semesters, she had "advanced" the money to Elle but has never received a refund. According to Ann, Elle over exaggerates regarding living expenses, and then she received a $4,000 refund in spring 2022 that Ann never received a portion of. Ann started requesting Elle settle up and provide receipts in August 2022, not May 2022.

¶ 25    Ann further testified that as of the date of the hearing, she was 100% up-to-date on tuition payments. She was withholding living expenses because she had not received receipts. Ann then left the courtroom in the middle of her testimony, despite being ordered not to. Security was called and Ann was brought back into the courtroom to finish her testimony. The trial court held her in direct civil contempt for directly disobeying its order, but did not sentence her any further.

¶ 26                    E. Closing Arguments and Trial Court's Ruling

¶ 27    After testimony concluded, the parties proceeded to closing arguments. Brendan argued that Ann's refusal to pay was in an effort to coerce Elle to meet with her and asked the trial court to find Ann in contempt and order her to pay a total of $5,562.05, which would bring Ann current through spring 2023. Ann then argued that the divorce judgment was not clear as to how, when,

and to whom payments were to be paid. Accordingly, any failure to pay would not be a willful violation of a court order and Ann should not be held in contempt.

¶ 28     The trial court then made its ruling, finding Ann in contempt. In so ruling, the trial court stated:

> "It's clear that [Ann] didn't want to send the tuition at the time that it was due because she wanted to force Elle to meet with her before she would give her a check. *** [T]he failure to pay tuition was not based on [Ann] not being able to do it, her understanding about what needed to happen, but her trying to control the situation, control her daughter, get her daughter to meet with her."

The trial court also entered a written order requiring Ann to pay $4,448.04 directly to Elle within 30 days to purge the contempt. This amount included $4,940.67 for fall 2022 tuition, $1,796.66 for fall 2022 living expenses, $1,177.05 for summer 2022 tuition, $3,720 for spring 2023 tuition, $2,735 for spring 2023 living expenses, less Ann's payments made in January 2023 totaling $9,881.34.

¶ 29                          F. Post-Hearing Motions

¶ 30     On September 26, 2023, Brendan filed a petition for attorney's fees and costs. On October 13, 2023, Ann filed a motion to reconsider/clarify ruling. On December 13, 2023, she filed an amended motion to reconsider/clarify ruling. In it, Ann argued that the trial court should have credited her for the tuition refund in the amount of $4,434; the trial court erred in holding her in contempt as the divorce judgement does not provide a due date, does not define a method of payment, nor indicates to whom payments are to be made, and even if the judgment did provide sufficient guidance, any delay in payment was due to Elle's own actions; the trial court erred in requiring Ann to pay for classes that Elle failed; Elle's refusal to provide Ann with transcripts

eliminated Ann's obligation to pay educational expenses; the trial court erred in modifying the divorce judgment by setting educational expenses at U of I rates. She further argued that the trial court failed to rule on several requests for relief in her motion to modify and requested that the court rule on those requests. Additionally, she alleged new evidence had become available which rendered Elle's testimony uncredible.

¶ 31    A hearing on Ann's motion occurred on January 4, 2024. After hearing arguments, the trial court entered a written order clarifying its judgement which read as follows:

"1. The court did not err when the respondent was not credited one-third of the $4,434.00 tuition reimbursement. The respondent presented evidence that Elle received a refund of $4434.00 from Purdue University. Elle testified that that refund was applied to tuition. The respondent failed to provide any proof that she overpaid tuition. The respondent merely asserts that she was entitled to one-third of the money if it was for an overpayment of tuition.

2. The court did not err when it found respondent in contempt for failing to pay for one-third of Elle's tuition. From the respondent's own admission, she had not paid one-third of the tuition because she wanted Elle to meet with her and discuss matters. Elle testified that she had to take out a student loan to avoid being dropped from her classes. The dissolution judgment does not specify when the payment is to be made, however, it would be ridiculous to assume that the payments could be made after the end of the semester. Elle was forced to pay for more than her one-third share of the tuition because the respondent failed to pay in a timely manner.

3. The court did not err when it found respondent responsible for paying one-third of the summer tuition. The dissolution judgment states that the parties stipulated that they would each pay 1/3 of the cost of tuition. Both parties were represented by counsel at the time the dissolution was entered. Their judgment did not contain any language that the children must maintain a certain grade point average for either party to be responsible for tuition or that the child had to provide either party with a copy of transcripts. The respondent's argument that she is not paying for an extra class because Elle failed a class therefore fails.

4. The court did not err in stating that going forward the parties when [*sic*] each be responsible for paying at the rate of the University of Illinois tuition as provided for in the statute. The University of Illinois rate puts a cap on the total cost so that parties know the maximum amount that they would have to pay. If Elle's tuition is lower than the University of Illinois tuition/expenses, then each party would be responsible for one-third of the cost at the lower rate. Any scholarships or loans that Elle received would be credited toward her one-third of tuition/expenses.

5. The court does not find that any of the "new" evidence presented by respondent is relevant to the motion to reconsider/modify. The respondent [*sic*] "new" evidence consists of a statement that Elle received a reimbursement for expenses which were not part of the rule to show cause hearing.

6. The court did not rule on any future payments during the hearing. The Court only ordered that the parties should pay at a University of Illinois rate. The respondent now argues that she should not have to pay for the Spring 2024 semester

because Elle has enough credits to graduate. The court does not address this argument as it was not before the court for hearing.

7. The rule to show cause hearing did not address any issues regarding Sam and the court will not enter any orders regarding his tuition/expenses.

8. The respondent's request for the court to order each party and child to sign any consent necessary for the educational institution to provide information is denied.

9. The circuit clerk is to send all attorneys of record a copy of this order."

¶ 32 On January 18, 2024, the trial court entered an order requiring Ann to pay attorney's fees and costs in the amount of $8,563. The order also clarified that the obligation to pay living expenses to Elle is predicated on the parties receiving proof of said costs.

¶ 33 Ann filed a timely notice of appeal on January 29, 2024.

¶ 34                                    II. ANALYSIS

¶ 35            A. Parties' Obligations Pursuant to the Divorce Judgment

¶ 36 At the heart of this appeal is what was actually required of the parties, pursuant to the divorce judgment. Therefore, we start our analysis by looking first to the divorce judgment. Provisions of a divorce judgment are interpreted in the same manner as contracts. *In re Marriage of Turrell*, 335 Ill. App. 3d 297, 305 (2002). The construction of a contract is a question of law, which we review *de novo*. *Id.* The divorce judgment, in relevant portion, reads: "By stipulation of the parties, college expenses as set forth in the statute shall be divided 1/3 to petitioner, 1/3 to respondent and 1/3 to the child. This shall apply to both children." The plain language of the provision requires reference to the statutory authority. To the extent our analysis requires statutory interpretation, our review is *de novo*. *In re Marriage of Dynako*, 2021 IL 126835, ¶ 14. Section

513 of the Illinois Marriage and Dissolution of Marriage Act discusses college expenses for a non-minor child:

> "(d) Educational expenses may include, but shall not be limited to, the following:
>
> > (1) except for good cause shown, the actual cost of the child's post-secondary expenses, including tuition and fees, *provided that the cost for tuition and fees does not exceed the amount of in-state tuition and fees paid by a student at the University of Illinois at Urbana-Champaign for the same academic year*;
> >
> > (2) except for good cause shown, the actual costs of the child's housing expenses, whether on-campus or off-campus, provided that the housing expenses do not exceed the cost for the same academic year of a double-occupancy a double-occupancy student room, with a standard meal plan, in a residence hall operated by the University of Illinois at Urbana-Champaign;
> >
> > (3) the actual costs of the child's medical expenses, including medical insurance, and dental expenses;
> >
> > (4) the *reasonable* living expenses of the child during the academic year and periods of recess:
> >
> > > (A) if the child is a resident student attending a post-secondary educational program; or
> > >
> > > (B) if the child is living with one party at that party's home and attending a post-secondary educational program as a non-resident student, in which case the living

- 13 -

expenses include an amount that pays for the reasonable cost of the child's food, utilities, and transportation; and

(5) the cost of books and other supplies necessary to attend college.

(e) Sums may be ordered payable to the child, to either party, or to the educational institution, directly or through a special account or trust created for that purpose, as the court sees fit.

(f) If educational expenses are ordered payable, each party and the child shall sign any consent necessary for the educational institution to provide a supporting party with access to the child's academic transcripts, records, and grade reports. The consent shall not apply to any non-academic records. Failure to execute the required consent may be a basis for modification or termination of any order entered under this Section. Unless the court specifically finds that the child's safety would be jeopardized, each party is entitled to know the name of the educational institution the child attends.

(g) The authority under this Section to make provision for educational expenses terminates when the child either: fails to maintain a cumulative "C" grade point average, except in the event of illness or other good cause shown; attains the age of 23; receives a baccalaureate degree; or marries. A child's enlisting in the armed forces, being incarcerated, or becoming pregnant does not terminate the court's authority to make provisions for the educational expenses for the child under this Section." (emphasis added) 750 ILCS 5/513(d)-(g) (West 2022).

¶ 37    In reading section 513 in conjunction with the divorce judgment[4], it is clear that Ann, Brendan, and Elle were each obligated to (1) contribute 1/3 towards the *actual* cost of tuition and fees, with that amount being capped at the rates of University of Illinois at Urbana-Champaign for the same academic year; (2) the *actual* cost of housing expenses, with that amount being capped at the rates for a double-occupancy student room, with a standard meal plan, in a residence hall operated by the University of Illinois at Urbana-Champaign for the same academic year; (3) the *actual* cost of medical expenses; (4) the *reasonable* living expenses of the child during the academic year and periods of recess; and (5) the cost of books and other supplies necessary to attend college. This obligation would only terminate if Elle failed to maintain a cumulative "C" grade point average, received a baccalaureate degree, or got married.

¶ 38                    B. Trial Court's Contempt Finding

¶ 39    Having established the parties' obligations pursuant to the divorce judgment, we turn now to the question of whether the trial court erred in finding Ann in contempt for failing to pay 1/3 of Elle's tuition and expenses. A finding of contempt is a question of fact for the trial court, and that finding will not be disturbed unless it is against the manifest weight of the evidence, or the record reflects an abuse of discretion. *In re Marriage of Logston*, 103 Ill. 2d 266, 286-87 (1984). A finding is against the manifest weight of the evidence when the opposite conclusion is apparent or when

---

[4] See *Sproull v. State Farm Fire and Casualty Company*, 2021 IL 126446, ¶ 20, stating that basic rule of construction of contracts is that all laws in existence when a contract is made necessarily enters into and form part of it as fully as if they were expressly referred to or incorporated into its terms. Here, the parties specifically agreed to split equally college expenses as set forth in the statute. Under the plain language of the divorce judgment and the basic rules of contract construction, section 513 is necessarily incorporated into the divorce judgment.

findings appear to be unreasonable, arbitrary, or not based on the evidence. *Indeck Energy Services, Inc. v. DePodesta*, 2021 IL 125733, ¶56. An abuse of discretion occurs when a trial court's ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court. *Blum v. Koster*, 235 Ill. 2d, 21, 36 (2009).

¶ 40    "The power to enforce an order to pay money through contempt is limited to cases of willful refusal to obey the court's order." *In re Marriage of Logston*, 103 Ill. 2d 266, 285 (1984). Noncompliance with an order to pay support payments (such as court ordered educational expenses) is *prima facie* evidence of contempt. *In re Marriage of Barile*, 385 Ill. App. 3d 752, 758-59 (2008). Once a *prima facie* case is established, the burden shifts to the other party to prove that the failure to make payments was not willful or contumacious and that there exists a valid excuse for his failure to pay. *Id.* at 759.

¶ 41    Here, Ann was found in contempt for failure to pay for summer 2022 tuition, fall 2022 tuition, and fall 2022 living expenses. The record is unclear as to what kind of contempt Ann was found in. We must determine this before continuing our analysis. The distinction between criminal and civil contempt is well established in Illinois law. Generally, contempt may be either (1) civil or criminal; and (2) direct or indirect. *People v. Weinstein*, 2024 IL App (2d) 230062, ¶ 105. Civil contempt is used to compel future compliance with a court order whereas criminal contempt is intended to punish conduct. *Id.* The trial court here was not attempting to punish Ann by holding her in contempt; rather it was attempting to ensure future compliance with the divorce judgment. It then follows that the contempt at issue here is civil rather than criminal. Additionally, Ann has the ability to purge the contempt by making a payment, which is one of the hallmarks of civil contempt. See *In re Marriage of Pavlovich*, 2019 IL App (1ˢᵗ) 172859, ¶ 29. Whether contempt is indirect or direct depends on where the conduct occurred. *Weinstein*, 2024 IL App (2d) 230062, ¶

106. If the conduct occurs in the presence of the trial court, the contempt is direct. *Id.* If the conduct occurs outside of the trial court's presence, the contempt is indirect. *Id.* In the instant case, we have conduct that occurred outside of the trial court's presence—namely, Ann's nonpayment of certain educational expenses. This would clearly constitute indirect contempt, as it occurred outside the presence of the trial court. The trial court, therefore, found Ann in indirect civil contempt.

¶ 42    Returning to the merits—was the trial court's finding of indirect civil contempt proper. Ann specifically testified that she refused to pay for both summer 2022 tuition and living expenses for fall 2022. In other words, she did not comply with an order to pay support payments, which constitutes *prima facie* evidence of contempt. *In re Marriage of Barile*, 385 Ill. App. 3d at 758-59. Accordingly, the burden shifted to Ann to show that there existed a valid excuse for her failure to make payments.

¶ 43    First, we review Ann's failure to pay tuition for summer 2022. Throughout the hearing, Ann stated that she was refusing to pay tuition for the summer of 2022 because Elle had failed two classes in the fall of 2021 and Ann refused to pay for the same classes twice. Elle, however, testified that the classes she took in the summer of 2022 were not to make up for the failed classes. Rather, she had taken them in order to get ahead. By Ann's own logic, she would not be paying for the same classes twice by paying for summer 2022 tuition. Further, nowhere in the divorce judgment or section 513 does it require the parties to only pay during the fall and spring semesters, or to only require the parties to pay for classes once. Instead, section 513 states that educational expenses may include "the actual cost of the child's post-secondary expenses, including tuition and fees." 750 ILCS 5/513(d) (West 2022). Section 513 further states that "[t]he authority under this Section to make provision for educational expenses terminates when the child either: fails to maintain a cumulative "C" grade point average, except in the event of illness or other good cause

- 17 -

shown; attains the age of 23; receives a baccalaureate degree; or marries. A child's enlisting in the armed forces, being incarcerated, or becoming pregnant does not terminate the court's authority to make provisions for the educational expenses for the child under this Section." 750 ILCS 5/513(g) (West 2022). Here, Ann put forward no evidence showing that Elle failed to maintain a cumulative "C" GPA, that Elle had received a baccalaureate degree, or married. The record instead shows that Elle maintained the appropriate GPA throughout her entire collegiate career, with her testifying that she currently has a GPA of 3.35 and the exhibits showing email exchanges between Elle and Ann wherein Elle states that her cumulative GPA has never fallen below a C average. Accordingly, Ann's obligation to pay 1/3 of Elle's tuition for summer 2022 was not terminated at the time of the hearing, and Ann's excuse is not valid. The trial court did not abuse its discretion in finding Ann in contempt for failing to pay for summer 2022 tuition.

¶ 44     Ann's rationale for not paying fall 2022 living expenses was that she had not received receipts showing actual expenses incurred. At the hearing, Elle contended that she did provide proof of actual expenses. Ann argues that because there were legitimate questions as to what her obligation entailed, contempt was inappropriate. Most relevant to our analysis is "whether Ann was obligated to pay for Elle's 'projected' expenses without receiving any proof that said expenses had 'actually' been incurred as the statute appears to mandate."

¶ 45     We first clarify that the statute does not mandate "actual" expenses, as Ann claims. Rather, it allows for the *actual* cost of housing expenses, the *actual* cost of medical expenses, the *reasonable* living expenses of the child during the academic year and periods of recess, and the cost of books and other supplies necessary to attend college. See *supra* ¶ 36-37; 750 ILCS 5/513(d) (West 2022).

¶ 46    Regardless, we find that what constitutes "reasonable" expenses is a legitimate question as to the obligations of the parties. The trial court answered this question on September 15, 2023, when it rendered its decision, finding that $8,210 per semester (the University of Illinois estimated living expenses for fall 2022) was reasonable. Elle's living expenses for fall 2022 (in the amount of $5,390) fell below this number and were therefore reasonable.

¶ 47    As the legitimate question as to the obligations of the parties has been answered, the trial court should now allow Ann time to comply with the order and pay Elle's living expenses for fall 2022. See *In re Marriage of Lyons*, 155 Ill. App. 3d 300; *In re Marriage of Arnold*, 122 Ill. App. 3d 776 (once a judicial determination is made answering a legitimate question as to obligations between the parties, the trial court should then allow time for the party to comply with the order). The finding of contempt was therefore improper. Accordingly, we reverse the trial court's finding of contempt as to fall 2022 expenses and allow Ann additional time to pay Elle's fall 2022 living expenses in the amount of $1,796.66 ($5,390/3).

¶ 48    In regards to fall 2022 tuition, Ann testified that she had paid this in full. She made a payment of $3,611 on January 8, 2023, and another payment in the amount of $6,270.34 on January 24, 2023, for a total amount of $9,881.34. Ann testified that it was her understanding that she was paying towards the tuition for fall of 2022 and the spring of 2023. In looking at what would be owed for tuition for fall 2022, Respondent's Exhibit No. 6 shows that the Purdue fall 2022 tuition totaled $15,422. See *supra* ¶ 8. Respondent's Exhibit No. 2 showed that the tuition and fees for an engineering degree from the University of Illinois in the fall of 2022 totaled $11,162. See *supra* ¶ 10. 1/3 of that would be $3,720.66[5]. As the Purdue tuition exceeds that of the University of Illinois

---

[5] After debiting the $3,720.66 for fall 2022 tuition from Ann's January 2023 payments totaling $9,881.34, there remains a balance of $6,160.68. As those payments were purportedly

tuition, Ann's obligation is capped at the University of Illinois rates. See 750 ILCS 5/513(d)(1) (West 2022). Therefore, Ann's obligation to pay tuition for fall 2022 was fulfilled as of January 24, 2023, and the trial court's finding of contempt in regard to fall 2022 tuition was against the manifest weight of the evidence. The trial court's finding of contempt in regard to fall 2022 tuition is vacated.

¶ 49  Before turning to the trial court's calculations of amounts owed, we will briefly address certain additional contentions Ann made as to why the trial court abused its discretion in finding her in contempt. As we have vacated the trial court's finding of contempt as to fall 2022 tuition and living expenses, we will focus on its finding of contempt as to summer 2022 tuition in our analysis.

¶ 50  Ann first contends it cannot be said that she willfully violated the divorce judgment by failing to pay Elle's tuition because it does not provide a due date, a method of payment, or specify to whom expenses should be paid. However, her own testimony clearly rebuts this. Ann repeatedly testified that she was flat out refusing to pay Elle's summer 2022 tuition. She would never be remitting payment. There was no confusion as to the due date, method of payment, or to whom Ann should direct her payment; rather, Ann willfully chose to refuse payment based on her own whims. The trial court's finding of contempt as to summer 2022 tuition was not an abuse of discretion, notwithstanding the divorce judgement's lack of a due date, method of payment, or specificity as to who payment should be made.

---

made towards fall 2022 and spring 2023, this balance will not be credited toward the amount owed for summer 2022. The record is not clear as to what expenses are owed for fall 2022 and spring 2023, and what tuition is owed for spring 2023.

¶ 51    Ann further contends that the delay in payment was due to Elle's own actions, and therefore the contempt finding was in error. We disagree again. Although Elle failed two classes which then required her to take classes during the summer to ensure she would graduate on time, none of Elle's actions constituted a terminating event under section 513 (the child fails to maintain a cumulative "C" grade point average; receives a baccalaureate degree; or marries (see 750 ILCS 5/513(g) (West 2022)). The trial court's finding of contempt as to summer 2022 tuition was not an abuse of discretion.

¶ 52                    B. Calculation of Amount Owed

¶ 53    We now address the trial court's calculation of the amount owed. Ann makes several arguments as to why the trial court erred in its calculations: (1) by not crediting Ann for the $4,434 tuition refund received in spring 2022; (2) by requiring Ann to pay for expenses with no proof of actual costs incurred; (3) by not applying section 513's cap on college tuition and fees; (4) by not allowing Ann her statutory right of access to Elle's academic transcripts; and (5) by violating Ann's due process rights in considering amounts due subsequent to the petition for rule being filed to determine the amount owed. Each of these arguments will be discussed in turn. As the calculation of the amount owed was ultimately calculating what the proper contempt sanction would be, we will review the trial court's calculation for an abuse of discretion. *In re Marriage of Daniels*, 240 Ill. App. 3d 314, 323 (1992).

¶ 54    Ann first argues that the trial court erred by not crediting her for the $4,434 tuition refund received in spring 2022. She further argues that "it should go without saying that each of Ann, Elle, and Brendan should be equally entitled to any refunds that were received for overpayment of tuition through the Spring 2022 semester." We disagree. The trial court did not abuse its discretion in declining to include the refund in calculating the amount owed by Ann. According to

Respondent's Exhibit No. 11, the spring 2022 tuition totaled $15,422. It does not show who made particular payments and in what amount. Rather, it shows the total amount for tuition for the semester being $15,422, and then shows what loans, scholarships, and payments were applied to cover that total amount. Ann did not provide any evidence showing how much she contributed to the spring 2022 semester and therefore did not provide any evidence showing that she overpaid tuition. Both Ann and Elle testified that for the spring 2022 semester, Brendan and Ann had each paid their 1/3 portion of tuition and expenses. As tuition totaled $15,422 for the semester, presumably each party paid 1/3 of that amount, but again, the record is not clear as to what payments Ann made for the spring 2022 semester and when she would have made them. Further, according to the Purdue University Financial Aid website, if a student takes advantage of all aid offered, they may have more aid than what is owed to the university. That amount can then be used to help cover housing, books, supplies, or other indirect educational expenses. See https://www.purdue.edu/dfa/aid/. Ann has provided virtually no evidence showing that she overpaid tuition for the spring 2022 semester, thereby entitling her to a portion of the refund received by Elle.

¶ 55    Ann also argues that to not credit her for the refund would result in unjust enrichment to Elle. However, Ann does not meaningfully flesh out this argument. In order to prevail on a claim for unjust enrichment, a plaintiff must prove that the defendant "unjustly retained a benefit to the plaintiff's detriment and that defendant's retention of the benefit violates fundamental principles of justice, equity, and good conscience." *HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.*, 131 Ill. 2d 145, 160 (1989). Ann does not explain fully how Elle has retained a benefit to Ann's detriment by not receiving a portion of the refund. Nor has she explained how Elle's retention of that benefit violates fundamental principles of justice, equity, and good conscience.

Rather, Ann simply states "[i]n the present case, the principle of unjust enrichment should have led the trial court to at least ensure that both parents and their daughter end up paying equal amounts for Elle's college education. Put simply, Elle only contributed 1/3 of the payments related to the refund she received and should not be allowed to benefit from the other 2/3 at her parents' expense." As Ann has not supported her substantive argument with pertinent authority, her argument regarding unjust enrichment is forfeited. See *In re Marriage of Katsap*, 2022 IL App (2d) 210706, ¶ 143 (quoting *U.S. Bank v. Lindsey*, 397 Ill. App. 3d 437, 459, "The appellate court is not merely a repository into which the appellant may dump the burden of argument and research.").

¶ 56    Ann compares the instant case to *In re Marriage of Thomsen*, 371 Ill. App. 3d 236 (which she miscites in her brief). She points out that in determining the amount owed for tuition, the trial court in *Thomsen* subtracted the amount of any subsidized loans, grants, and scholarships received from the total tuition. The remaining balance was split equally between the parties. Ann reasons that this shows "how a proportionate credit or responsibility for tuition fees [*sic*] can be determined and allocated among parties" and accordingly, she is entitled to a portion of $4,434 tuition refund. We again disagree. The fact that the trial court in *Thomsen* chose, within its discretion, to enter an order requiring the parties to split educational costs equally after deducting grants or scholarships does not require Ann to receive credit for a tuition refund. She has provided no evidence showing that she overpaid on tuition for the spring 2022 semester, outside of the mere existence of a tuition refund. This does not make the trial court's decision not to credit her arbitrary, fanciful, or unreasonable. Therefore, for all the reasons stated above, the trial court did not abuse its discretion in not crediting her for the $4,434 tuition refund received in spring 2022.

¶ 57 Ann's second argument is that the trial court erred by requiring Ann to pay for expenses with no proof of actual costs incurred. As discussed above, the statute allows for the *actual* cost of housing expenses, the *actual* cost of medical expenses, the *reasonable* living expenses of the child during the academic year and periods of recess, and the cost of books and other supplies necessary to attend college. See *supra* ¶ 36-37; 750 ILCS 5/513(d) (West 2022). Ann did receive proof of the actual cost of housing expenses by way of Elle's lease agreement. It does not appear that medical expenses or the cost of books and other supplies are at issue, therefore, no proof was required. Regarding reasonable living expenses, the legislature utilized the word "reasonable" for a reason. When the legislature uses certain language in one section of a statute, and different language in another part, courts assume that the legislature intended different meanings. *Masterton v. Village of Glenview Police Pension Board*, 2022 IL App (1st) 220307, ¶ 47.

¶ 58 Although there was a legitimate question as to what constituted "reasonable" living expenses, the trial court answered that question, as outlined above. See *supra* ¶ 46. Accordingly, we reverse the trial court's contempt finding as to fall 2022 expenses and allow Ann additional time to pay Elle's fall 2022 living expenses in the amount of $1,796.66.

¶ 59 We agree with Ann's third argument, that the trial court erred by not applying section 513's cap on college tuition and fees. As discussed above, the divorce judgment incorporates the statute by reference. Section 513, which allows for payment of tuition and fees "*provided that the cost for tuition and fees does not exceed the amount of in-state tuition and fees paid by a student at the University of Illinois at Urbana-Champaign for the same academic year*." (emphasis added) 750 ILCS 5/513(d)(1) (West 2022). Looking to the tuition for summer of 2022, there is no information in the record as to what the University of Illinois tuition rates were during that time period. Generally, where the record on appeal is lacking, we will assume that the order entered by the trial

court was correct. See *Foutch v. O'Bryant*, 99 Ill. 2d 389, 392 (1984). Here, however, it appears as though the trial court based its calculation of the summer 2022 tuition on Elle's spreadsheet, which contained a typo (see *supra* ¶ 9). Accordingly, Ann's obligation for summer 2022 is amended to reflect the amount owed on the tuition statements (see *supra* ¶ 7), or $1,173.71 ($3,101.15 for Purdue + $420 for Waubonsee / 3).

¶ 60    Regarding the fall of 2022, actual tuition was $15,422. However, looking to Respondent's Exhibit No. 2, tuition and fees at University of Illinois for an engineering degree in the fall of 2022 totaled $11,162. Accordingly, pursuant to the divorce judgement and section 513, the maximum tuition and fees that could be ordered payable for fall 2022 is $11,162, with Elle, Ann, and Brendan each being responsible for 1/3 of that amount ($3,720.66). The trial court erred when it set the fall 2022 tuition rate at $4,940.67 when calculating the amount owed by Ann. As discussed above, we vacate the trial court's contempt finding as to fall 2022 tuition, as the appropriate amount was paid by January 18, 2023.

¶ 61    We also agree with Ann's fourth argument, that the trial court erred by not allowing Ann access to Elle's transcripts. In a similar vein, she later argues that the court erred in denying her request to order Elle to provide signed consent forms for Ann to access Elle's academic records. We agree with this argument as well. The January 4, 2024, court order states "[t]he respondent's request for the court to order each party and child to sign any consent necessary for the educational institution to provide information is denied." This is plainly contrary to the language of section 513(f), which states "[i]f educational expenses are ordered payable, each party and the child *shall* sign any consent necessary for the educational institution to provide a supporting party with access to the child's academic transcripts, records, and grade reports." (emphasis added) (750 ILCS 5/513(f) (West 2022)). Here, educational expenses were ordered payable in the March 11, 2021,

divorce judgment. Under section 513(f), the use of the word "shall" connotes a mandatory obligation. *In re Marriage of Ackerley*, 33 Ill. App. 3d 382, 398 (2002). Meaning that the parties and Elle were required to sign any consent from necessary to provide Ann with access to Elle's academic records. Accordingly, the portion of the trial court's order stating that "[t]he respondent's request for the court to order each party and child to sign any consent necessary for the educational institution to provide information is denied" was improper. This portion of the court order is reversed and remanded, with the trial court to enter an order consistent with section 513(f), requiring consent forms to be signed by Ann, Brendan, and Elle, for both Ann and Brendan to access Elle's academic records as necessary.

¶ 62    To the extent that Ann argues the trial court's failure to allow her access to Elle's transcripts requires us to reverse and remand to allow the trial court to reconsider her motion to modify, we disagree. Although section 513 does require the trial court to consider the child's academic performance in ruling on a motion to modify (see 750 ILCS 5/513(j) (West 2022)), Elle testified to her academic performance. She testified that while she had failed two classes in the fall of 2021, she had made up those classes and currently had a GPA of 3.35. This was sufficient for the trial court to consider her academic performance in making its ruling.

¶ 63    Ann's fifth argument is that the trial court violated her due process rights when it considered amounts due subsequent to the petition for rule to show cause being filed in determining the amounts owed. We agree with Ann on this point. In the context of indirect civil contempt, due process requires that the contemnor receive (1) an evidentiary hearing and (2) adequate notice of the time and place of such hearing. *Weinstein*, 2024 IL App (2d) 230062, ¶ 107. Here, Ann received notice by way of the petition for a rule to show cause. The petition only put Ann on notice as to

tuition and expenses for summer and fall 2022. The trial court therefore abused its discretion in considering amounts owed for spring 2023 in calculating the purge amount.

¶ 64 Another issue that Ann presents is that the trial court erred in its September 15, 2023, order, by setting future tuition and living expenses as the rates for attendance at the University of Illinois. However, Ann ignores the January 4, 2024, order, which was entered after hearing on her motion to reconsider/clarify the court's ruling. That order states:

"The court did not err in stating that going forward the parties when [*sic*] each be responsible for paying at the rate of the University of Illinois tuition as provided for in the statute. The University of Illinois rate puts a cap on the total cost so that the parties know the maximum amount that they would have to pay. If Elle's tuition is lower than the University of Illinois tuition/expenses, then each party would be responsible for one-third of the cost at the lower rate. Any scholarships or loans that Elle received would be credited toward her one-third of tuition/expenses."

This clearly addresses Ann's concerns that the language in the September 15, 2023, set the tuition reimbursement rate at that of the tuition at U of I, rather than setting the U of I rates as a cap. Accordingly, we affirm the trial court's ruling on that issue.

¶ 65 Finally, regarding the trial court's award of attorney's fees pursuant to 750 ILCS 5/508(b). As we vacated certain contempt findings, we vacate and remand for the trial court to reconsider its award of attorney's fees in light of this order.

¶ 66 In sum, regarding the trial court's contempt findings, we conclude (1) that the trial court did not err in finding Ann in contempt for failing to pay summer 2022 tuition; and (2) that the trial court erred in finding Ann in contempt for failing to pay fall 2022 tuition and expenses.

¶ 67    Regarding the trial court's calculation of the amount owed, we conclude (1) that the trial court did not err in declining to credit Ann for the $4,334 tuition refund received by Elle in March 2022; (2) that the trial court erred in including fall 2022 living expenses in the purge amount—the trial court answered a legitimate question as to the obligations of the parties, Ann is now to be given time to pay fall 2022 living expenses in the amount of $1,796.66; (3) that the trial court erred in not applying section 513's cap on college tuition and fees; (4) that the trial court erred in not requiring consent forms to be signed by all parties for parental access to Elle's grades; and (5) that the trial court erred in including amounts due for spring 2023 tuition and expenses in calculating the purge amount.

¶ 68    Accordingly, we affirm the trial court's contempt finding as to summer 2022 tuition and amend the purge amount as outlined above to $1,173.71.[6] We reverse the trial court's contempt finding as to fall 2022 tuition and fall 2022 expenses. We vacate and remand the trial court's award of attorney's fees. On remand, the trial court shall (1) enter an order requiring all parties to sign consent forms allowing parental access to Elle's grades; and (2) conduct a new hearing pursuant to 750 ILCS 5/508(b) to determine appropriate attorney's fees in light of this court's order.

¶ 69                                III. CONCLUSION

¶ 70    For the reasons stated, we affirm in part, reverse in part, and vacate and remand in part the judgment of the circuit court of Kendall County.

¶ 71    Affirmed in part; reversed in part; vacated and remanded with instructions in part.

---

[6] Illinois Supreme Court Rule 366(a)(5) permits us to enter any judgment that ought to have been made. Ill. S. Ct. R. 366(a)(5) (eff. Feb. 1, 1994); see also *In re Marriage of Benink*, 2018 IL App (2d) 170175, ¶ 35.